304 Ga. 349
FINAL COPY

S18A0824. KING v. THE STATE.

BLACKWELL, Justice.

Albert Lee King was tried by a Twiggs County jury and convicted of murder and aggravated assault in connection with the death of Lelia Mae Huston. King appeals, asserting that the evidence is insufficient to sustain his conviction for aggravated assault and that he was denied the effective assistance of counsel. We affirm.[1]

1. Viewed in the light most favorable to the verdicts, the evidence shows

---

[1] Huston was killed on September 10, 2003. The following month, a Twiggs County grand jury indicted King, charging him with murder with malice aforethought and aggravated assault. He was tried in July 2004, and the jury found him guilty on both counts. The trial court sentenced King to imprisonment for life for the murder and a consecutive term of 20 years (ten years imprisonment, followed by ten years on probation) for the aggravated assault. King filed a motion for new trial in August 2004, and he amended the motion in April and June 2015. (This is yet another case in which we are presented with an extraordinary post-conviction delay in the trial court. See Owens v. State, 303 Ga. 254, 258-259 (4) (811 SE2d 420) (2018).) The trial court held a hearing, and in June 2015, it denied the motion for new trial. King filed a timely notice of appeal, but after the case was docketed in this Court, he failed to file a brief. As a result, in December 2017, we issued an order striking his case from the docket and remanding for the trial court to consider whether new counsel ought to be appointed. New counsel was appointed, and King then filed a motion for an out-of-time appeal, which was granted on January 10, 2018. King filed a second timely notice of appeal, and the case was docketed to the April 2018 term of this Court and submitted for a decision on the briefs.

that Huston and King were neighbors. On September 10, 2003, Huston's husband came home from work and found her dead, lying in the yard and covered by a blanket. A forensic pathologist conducted an autopsy and determined that Huston died as a result of asphyxiation by strangulation. The pathologist also determined that Huston had sustained two head injuries — one near the forehead, and the other to the back of her head — consistent with blunt force trauma. At trial, the pathologist explained: "[T]here had been an impact against the scalp which has caused bleeding beneath the scalp itself. . . . [E]ither the head has been impacted against something or something has been impacted against the head to cause that bleeding." About the forehead injury, the pathologist opined that the impact causing that injury would not have killed Huston, but it "was certainly hard enough that . . . she might have been stunned." The pathologist could not say whether that injury accelerated her death, but, he said, "It's certainly possible that the blunt force injuries may have stunned this individual. Might not have knocked them out, necessarily, but a lick to the head like that, it certainly would cause you to — it would be uncomfortable and may indeed have caused a mild degree of concussion."

Investigators interviewed King, who at first denied knowing anything about Huston's death. In a subsequent interview, however, King gave a statement in which he admitted that he killed Huston.[2] In his statement, King explained that he had gone to Huston's house on the morning of September 10 and asked if he could use her bathroom. Huston let King into the house, and as he walked to the bathroom, he observed her purse on a counter. When he came back out of the bathroom, he noticed that the purse was gone. Huston emerged from her bedroom, accused King of stealing $1,300 from her purse, and proceeded to pat down King's pockets. King denied that he had seen or taken any money, and he pushed her away "in a forceful manner," causing her to fall back and strike her head against some object. Huston stood up, demanded her money, and threatened to call the police. King then punched Huston in the jaw. At that point, Huston ran out the back door, and King gave chase. Huston fell as she ran into the yard, King jumped on top of her, and they began to struggle. King eventually used his "do rag" and right arm to choke Huston until she stopped moving. He then covered her body with a blanket and returned home.

_____

[2] His admission was video recorded, and he also made a written statement at the request of the investigators.

King does not dispute that the evidence is sufficient to sustain his conviction for murder by strangulation, but he contends that the State failed to prove beyond a reasonable doubt that he committed an aggravated assault by striking Huston about the head with a "deadly weapon or . . . any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2).[3] This contention is without merit. The testimony of the forensic pathologist establishes that Huston sustained two head injuries as a result of blunt force trauma. That the State was unable to definitively identify the object or instrument that caused the head injuries does not render the evidence insufficient to prove aggravated assault. See Allen v. State, 297 Ga. 702, 703 (2) (777 SE2d 680) (2015) (the existence of a deadly weapon may be shown by circumstantial evidence). See also State v. Wyatt, 295 Ga. 257, 262 (2) (a) (759 SE2d 500) (2014) (an indictment for aggravated assault "is not required to identify the exact weapon or object used if the circumstances of the case do not allow such specificity"); Talley v. State, 209 Ga. App. 79, 81 (3) (432 SE2d 667) (1993)

---

[3] King does not dispute in his brief that Huston's head injuries constituted "serious bodily injury" under OCGA § 16-5-21 (a) (2).

("It is clear that even in the absence of the production or verbal description of the weapon used, evidence as to the nature, kind and location of the wounds inflicted by the assailant is sufficient to allow the jury to infer the character of the weapon." (Citation and punctuation omitted)). Viewed in the light most favorable to the verdicts, the evidence presented at trial was sufficient to authorize a rational jury to find beyond a reasonable doubt that King was guilty of murder and aggravated assault. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. King also contends that he was denied the effective assistance of counsel when his trial counsel failed to request a jury charge on justification. King was represented by new counsel in connection with his motion for new trial, and in that motion, he claimed that his trial counsel was ineffective in several respects, but he did not assert any claim that trial counsel was ineffective for failing to seek a charge on justification. He cannot, therefore, now pursue a claim on direct appeal that trial counsel was ineffective with respect to a charge on justification. See Wilson v. State, 286 Ga. 141, 144 (4) (686 SE2d 104) (2009) ("Where the issue of trial counsel's effectiveness has been raised on

5

motion for new trial, any claims of ineffective assistance by trial counsel not raised at that time are waived." (Citation and punctuation omitted)).

In an effort to escape this procedural bar, King argues that his original post-conviction counsel was ineffective for failing to assert on motion for new trial that his trial counsel was ineffective for failing to seek a justification charge. But we have held before that a forfeited claim of trial counsel ineffectiveness cannot be resurrected by bootstrapping it to a claim of post-conviction counsel ineffectiveness. See Wilson, 286 Ga. at 145 (4). As we have explained, indulging such bootstrapping "would eviscerate the fundamental rule that ineffectiveness claims must be raised at the earliest practicable moment" and would "promote serial appellate proceedings." Id. (Citation and punctuation omitted). If King wishes to pursue a claim that his post-conviction counsel was ineffective in this regard, he must do so through a petition for a writ of habeas corpus. See id. See also Smart v. State, 299 Ga. 414, 423-424 (5) (788 SE2d 442) (2016).

Judgment affirmed. Hines, C. J., Melton, P. J., Benham, Hunstein, Nahmias, Boggs, and Peterson, JJ., concur.

Decided August 27, 2018.

Murder. Twiggs Superior Court. Before Judge Gillis.

David J. Walker, for appellant.

L. Craig Fraser, District Attorney, Peter F. Larsen, Sr., Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.