306 Ga. 351
FINAL COPY

S19A0331.  ELKINS v. THE STATE.

BOGGS, Justice.

In 2013, Appellant De'Marquise Kareem Elkins was convicted of malice murder and other crimes in connection with the shooting death of 13-month-old Antonio Santiago and the shooting of the baby's mother, Sherry West, as well as the shooting ten days earlier of Pastor Wilfredo Calix-Flores behind his church. The trial court sentenced Appellant – who was 17 years old at the time of the crimes – to serve life in prison without the possibility of parole ("LWOP") for the baby's murder and consecutive terms of years for all but one of his other convictions. Appellant contends, among other things, that the trial court violated his constitutional rights by preventing him from showing that someone else committed the crimes; that he was deprived of a fair trial and the presumption of innocence when

the jury heard that he had a juvenile criminal record; and that he was denied the effective assistance of counsel.

As explained below, the evidence presented at trial was legally sufficient to support Appellant's convictions. The trial court did not violate Appellant's constitutional rights by preventing him from showing that someone else committed the crimes, he was not deprived of a fair trial or the presumption of innocence by a fleeting reference at trial to a "criminal juvenile report," and his claims of ineffective assistance related to his trial counsel are waived. One claim of ineffective assistance, which relates to his motion-for-new-trial counsel, is not waived, however, and we must remand for an evidentiary hearing and findings of fact on that claim. Accordingly, we affirm in part and vacate in part, and we remand the case with direction.[1]

---

[1] We do not address Appellant's remaining enumerations of error, most of which relate to his LWOP sentence, because the outcome on remand might render them moot. These claims can be addressed, if necessary, in an appeal from the trial court's ruling on remand. See *Welbon v. State*, 304 Ga. 729, 730 n.2 (822 SE2d 277) (2018) ("[A] criminal defendant in a second, post-remand

appeal may raise issues . . . that were raised but not decided in the first appeal.").

The shootings occurred on March 11 and 21, 2013. On March 27, 2013, a Glynn County grand jury indicted Appellant for malice murder, two counts of felony murder, four counts of aggravated assault, two counts of attempted armed robbery, and one count each of first degree child cruelty and possession of a firearm during the commission of a felony. The indictment also charged 15-year-old D. L. with seven crimes related to the shootings of the baby and West; charged Appellant's mother, Karimah Elkins, with making a false statement to a government agency, tampering with evidence, and possession of a firearm by a convicted felon; charged Appellant's aunt, Katrina Elkins, with making a false statement to a government agency; and charged Appellant's older sister, Sabrina Elkins, with tampering with evidence. Appellant filed three speedy trial demands, including one after his arrest on March 22 but before he was indicted five days later on March 27. Due to extensive pretrial publicity in Glynn County, the trial was moved to Cobb County, where Appellant and his mother were jointly tried from August 9 to 30, 2013. Appellant was represented at trial by attorneys Kevin Gough, Jonathan Lockwood, and Ashley Wood. The jury found Appellant guilty of all charges. The State nolle prossed the firearm charge against his mother, and the jury acquitted her of the false statement charge but found her guilty of tampering with evidence.

On September 17, 2013, the trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder, 30 years consecutive for the attempted armed robbery of West, 20 years consecutive for aggravated assault against West by shooting her, 20 years consecutive for aggravated assault against West by striking her in the head with a gun, five years consecutive for possession of a firearm during the commission of a felony, and 30 years consecutive for the attempted armed robbery of Calix-Flores, plus 20 years for aggravated assault against Calix-Flores by shooting him concurrent with the related armed robbery sentence but consecutive to the other sentences. Appellant's remaining guilty verdicts were vacated by operation of law or merged for sentencing. Although it appears that the trial court should have separately sentenced Appellant for first degree child cruelty, see *Linson v. State*, 287 Ga. 881, 885-886 (700 SE2d 394) (2010), "when a merger error benefits a defendant and the State fails to raise it by cross-appeal," *Dixon v. State*, 302 Ga. 691, 698 (808 SE2d 696) (2017), we generally do not correct the error, and we decline to do so here. The court ultimately sentenced Appellant's mother to serve ten years in prison for tampering with

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On the evening of March 11, 2013, Appellant, who was 17 years old, rode on the handlebars of 16-year-old T. S.'s bicycle to a recreation center in Brunswick to play basketball. While waiting to play, they and 17-year-old D. J. decided

---

evidence; the Court of Appeals affirmed her conviction. See *Elkins v. State*, 350 Ga. App. 816 (830 SE2d 345) (2019)). Appellant's aunt and sister entered guilty pleas to the charges against them, and D. L. eventually pled guilty to the attempted armed robbery of West.

On September 25, 2013, Appellant filed a motion for new trial. On December 9, 2013, attorney Katherine Mason filed an entry of appearance on his behalf. With Mason's assistance, Appellant amended his motion for new trial on April 6 and November 6, 2015. On December 18, 2015, the trial court held a hearing on the motion. On March 21, 2016, this Court decided *Veal v. State*, 298 Ga. 691 (784 SE2d 403) (2016), concerning the constitutionality of an LWOP sentence for a murder committed when the defendant was a juvenile. Three days later, Appellant filed another amendment to his motion for new trial that cited *Veal* and asked the trial court to resentence him to life with the possibility of parole. On September 9, 2016, the trial court held a hearing on the amendment and the request for resentencing. On July 12, 2017, the court entered a detailed order denying the new trial motion and declining to resentence Appellant. Appellant filed a motion to extend the time to file a notice of appeal, and the court extended the deadline to September 1, 2017.

On August 17, 2017, Appellant, assisted by new counsel Josh Moore, filed an "Emergency Motion" to reconsider, vacate, or stay enforcement of the order denying the new trial motion and to reopen the evidence on the propriety of Appellant's LWOP sentence in light of *Veal*, arguing among other things that Mason provided ineffective assistance of counsel in connection with the request for resentencing and the hearing on September 9, 2016. Four days later, on August 21, 2017, the trial court denied the motion without a hearing. On August 30, 2017, Appellant filed his notice of appeal. The trial court transmitted the record, which was docketed in this Court to the term beginning in December 2018. The case was orally argued on February 5, 2019.

4

to go to a nearby store to buy Gatorade. On the way, they saw Pastor Calix-Flores and a parishioner working on a fence and a gate behind the pastor's church. On the way back from the store, after T. S. and D. J. had walked past Calix-Flores and the parishioner, Appellant pulled out a gun, pointed it at Calix-Flores and the parishioner, and demanded their cell phones and wallets. When the parishioner said that he did not have any, Appellant shot Calix-Flores in the arm. As the two men ran to the church building for shelter, Appellant fired at them five more times. Appellant then ran up to T. S. and D. J. and warned them that if they said anything, something would happen to them. Appellant left alone down an alley. T. S. and D. J. fled in a different direction. Video surveillance captured the boys fleeing.

Ten days later, on the morning of March 21, 15-year-old D. L. woke up around 8:30, went to his great-grandmother's house for a few minutes, and then walked to a nearby apartment complex, where he saw Appellant and nodded to him. Appellant was wearing a red sweatshirt, blue jeans, and a silver chain, and D. L. was

wearing a black hoodie, Levi's pants, and Jordan shoes. Minutes later, D. L. was walking toward his uncle's house when he ran into Appellant again. As they walked along, Appellant, who was about three months short of his eighteenth birthday, asked D. L., who was only 15, if D. L. had ever robbed anyone, and D. L. said no. Appellant showed D. L. the handle of a gun on his waist and joked about robbing him. Appellant indicated that he was looking for "Mexicans" to rob and asked D. L. if he knew where any Mexicans lived. D. L. told him that they were "in the area where [the Mexicans]" live.

When Appellant and D. L. turned onto Ellis Street, D. L. saw West pushing a stroller down the street, and Appellant headed toward her. D. L. was a few steps behind when Appellant walked up to West and demanded her purse. She did not give it to him, saying that she had no money. Appellant pulled out his gun and asked West if she wanted him to shoot her baby, and she begged him not to. He demanded the purse again, but she refused, and Appellant hit her in the face with the gun and again demanded the purse, but she did not give it to him. Appellant threatened to shoot the baby and

6

started counting down from five, but West stopped him when he got to three; he again demanded her purse, and she again refused. Appellant walked around the stroller, fired a shot into the ground, shot West in the leg, and resumed the countdown. Appellant then pointed the gun at the baby and shot him between the eyes, killing him instantly. West started screaming, and as Appellant and D. L. fled, she managed to wheel the stroller to a nearby yard and tried to perform CPR on the baby until the police arrived.

D. L. ran to his great-grandmother's house, and Appellant followed him. They entered through the back door. D. L.'s great-grandmother, his great-grandmother's friend, and D. L.'s 14-year-old cousin J. L. were there, and Debra Obley, D. L.'s great-aunt, arrived shortly afterward. Obley agreed to give Appellant a ride, and he had his red sweatshirt with him when he got into the car. Appellant was looking around, crouching down in the car, and acting strangely, and Obley asked him if he was skipping school. When Obley began questioning Appellant, he indicated that he wanted to

7

get out of the car. When Obley let him out, she saw what looked like a gun stuck in his pants.

Detective Angela Smith was the first officer to arrive at the scene of the shooting. The baby was pronounced dead, and West was taken to the hospital, where she was crying, asking about the baby's condition, and asking to see him. Smith told West that the baby was dead. West described the assailants as two black males and said that the older one was wearing a red sweatshirt and had thick, curly hair and thick eyebrows, a description that matched Appellant. When the baby's father arrived, Smith allowed him to see West, who told him that their baby was dead.

On the next morning, March 22, 2013, Appellant went to the apartment of some other relatives and hid the gun under a love seat. When he was taken into custody later that morning, he had two .22-caliber bullets in his pocket, the same caliber as the bullet that killed the baby. He agreed to be interviewed by the police. Later, when he was walking to the parking lot for transportation, he said to the officers accompanying him, "Y'all ain't got s**t on me. Y'all ain't got

8

no gun. Y'all ain't got fingerprints. All y'all have is a f\*\*king acquittal." One of the officers smiled, and Appellant said, "Oh, you got the gun?"

On the same morning, Appellant's mother and older sister went to the apartment where Appellant hid the gun and retrieved it from under the love seat. An older relative took the gun from them, unloaded it, and gave the gun back to them. Later that morning, Appellant's mother and sister got a ride to a saltwater fishing pond behind a flooring store off Highway 17, and they threw the gun into the pond. That afternoon, officers executed a search warrant for the place where Appellant was staying and recovered a red sweatshirt and a silver necklace that appeared to belong to Appellant. The gun was recovered a few days later.

Appellant does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized

9

above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Brown v. State*, 302 Ga. 454, 456 (807 SE2d 369) (2017) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

2. Appellant asserts that the trial court violated his constitutional rights by preventing him from showing that someone else committed the crimes. Specifically, he complains of the trial court's calling an overnight recess during his cross-examination of J. L. and of the trial court's barring him from introducing extrinsic evidence of the baby's parents' history of addiction and family violence, including with their older children. We address each claim in turn.

(a) Appellant contends that by calling an overnight recess during his cross-examination of J. L., the trial court violated his right to confront the witnesses against him.

10

The Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Limitations on cross-examination are generally reasonable so long as the court does not cut off all inquiry on a subject that the defense is entitled to cross-examine on. As we have repeatedly explained, trial courts retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Shaw v. State*, 301 Ga. 14, 19 (799 SE2d 186) (2017) (citations and punctuation omitted; emphasis in original). Thus, we review a limitation of the scope of cross-examination only for abuse of discretion. See id.

Immediately before J. L. testified, the trial court said, "[I]t's 5:25. Do you have a short witness that we can put up? . . . [I]s there one that we can get started with for a few minutes before we end for the day? I want to end at about a quarter to 6, 5:45." The State said that it could get started with a witness, and Appellant's counsel requested a bench conference. During the bench conference, Appellant's counsel said, "I would object only if it was [D. L.]. I don't

want us to get started on him. I don't think that would be appropriate. . . . We can start on anyone else, but not him." The bench conference ended, and the State then called D. L.'s cousin J. L., who was 14 years old when the crimes were committed but 15 years old when he testified at trial.

On direct examination, J. L. identified Appellant as the boy he saw at his great-grandmother's house with D. L. shortly after the shooting. Appellant then cross-examined J. L., asking multiple questions about J. L.'s testimony on direct examination that he did not go to school on the day that the baby was shot because J. L. "didn't have nothing to wear that day."[2] Appellant's counsel also

---

[2] Four pages into the cross-examination, the following exchange occurred:
    Q:    You say you didn't go to school on March 21st because you didn't have any clothes?
    A:    Yes.
    Q:    When -- it was fairly cold on March 21st, wasn't it?
    A:    No.
    Q:    It wasn't? So when — when you walked to your [great-grandmother's] house — I mean, you did have some clothes on when you walked there; right?
    A:    Yes.
    Q:    Okay. So I guess what you were saying is that you didn't have any school clothes to wear . . . ?

repeatedly questioned J. L. about where he slept on the night before the baby's shooting and how certain he was about his answer. Twelve pages into the cross-examination, the court asked if J. L. needed a break, and J. L. indicated that he did. Appellant objected, and the court said, "Well, it's obviously that – the problem I have is that it's ten until 6:00, and I told the jury I was going to let them go five minutes ago." The court asked how much longer the cross-examination was going to be, and counsel replied, "It could be very short, depending on what the answer to the question is." At that point, the court decided to recess for the evening.[3] The next morning, the trial court explained before the jury was brought in that J. L. was 15 years old, his mother was incarcerated, and he did not have a place to live or clean clothes for school. According to the court, J. L. "shut down" when Appellant's counsel repeatedly questioned him

---

A:     Yes.
Q:     Okay. And that's why you skipped school that day? Is that why you skipped school that day? . . . [I]s the reason you skipped school that day is you didn't have any clothes?
A:     Yes.
[3] After the jury exited the courtroom, the State joined in Appellant's objection.

13

about where he slept the night before the shooting and whether he was "certain" or merely "pretty sure" about his answer, which the court said was impeachment as to a collateral issue. The court then proceeded with the trial and allowed defense counsel to continue cross-examining J. L. at length.

The reasons the trial court gave for calling an overnight recess when it did are supported by the record. Moreover, trial courts have a duty to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to protect witnesses from harassment or undue embarrassment. See OCGA § 24-6-611 (a) (3). See also OCGA § 24-6-623 ("It shall be the right of a witness to be examined only as to relevant matters and to be protected from improper questions and from harsh or insulting demeanor."). Under the circumstances of this case, we see no abuse of discretion. See *Smith v. State*, 297 Ga. 268, 270 (773 SE2d 269) (2015) ("[A] trial court has considerable discretion to control the trial of the case to ensure a fair trial and the orderly administration of justice."); *Schneider v. State*, 267 Ga. App. 508, 511 (603 SE2d 663)

(2004) (citing predecessor to OCGA § 24-6-623 and rejecting claim that trial court improperly commented on the evidence by admonishing defense counsel for speaking too loudly when questioning a 12-year-old witness); *Phyfer v. State*, 259 Ga. App. 356, 360 (577 SE2d 56) (2003) (finding no abuse of discretion in trial court's refusal to allow defense counsel to repeatedly ask a 16-year-old witness questions that had been fully answered, "especially in light of the witness' youth").

(b)    Appellant contends that the trial court violated his rights to confront the witnesses against him and to present a defense by barring him from introducing extrinsic evidence about the baby's parents. First, Appellant sought to introduce evidence that, more than a decade before the shootings, West abused her two older children in New Jersey, and the baby's father abused two romantic partners and threatened them and their children with harm and even death. Second, Appellant sought to introduce evidence of both parents' history of addiction, which he claims supports an inference "either that their need for ready money might have been powerful

15

enough to eclipse reason and morality or else that they had become enmeshed with violent and dangerous drug dealers bent on retaliation or collection of an unpaid debt." According to Appellant, this extrinsic evidence about the baby's parents would have allowed him to show that there were other potential suspects in the baby's shooting and that the trial court unfairly sheltered the baby's parents from "suspicion" of involvement in their baby's death.

> Certainly a defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature.

*Moss v. State*, 298 Ga. 613, 616 (783 SE2d 652) (2016). See also *Roberts v. State*, 305 Ga. 257, 260-261 (824 SE2d 326) (2019) (discussing *Moss*). "Evidence that merely casts a bare suspicion on another or raises a conjectural inference as to the commission of the crime by another is not admissible." *Curry v. State*, 291 Ga. 446, 453 (729 SE2d 370) (2012) (citation and punctuation omitted).

16

Here, Appellant's own argument for presenting the extrinsic evidence shows that it would have cast only a bare suspicion on the baby's parents or raised a conjectural inference that one or both of them might be the guilty parties; "the evidence would not have raised a reasonable inference that Appellant was innocent or directly connected anyone else to [the baby's] murder." *Heard v. State*, 295 Ga. 559, 568 (761 SE2d 314) (2014). Under the circumstances of this case, we see no abuse of discretion. Cf. *Gilreath v. State*, 298 Ga. 670, 673 (784 SE2d 388) (2016) (holding that trial court abused its discretion in preventing the defendant from questioning a witness about a prior allegation of child abuse against the only other adult in the home on the day of the child victim's beating death); *Scott v. State*, 281 Ga. 373, 376-377 (637 SE2d 652) (2006) (same).[4]

---

[4] In connection with this enumeration of error, Appellant claims that the prosecutor, in legal arguments supporting two objections that the prosecutor made, improperly vouched for the credibility of the baby's father, who was called as a defense witness. But Appellant acknowledges that he did not make a contemporaneous objection to the prosecutor's statements, thereby waiving this claim. See *Ross v. State*, 296 Ga. 636, 639 n.6 (769 SE2d 43) (2015) (explaining that plain error review does not apply in this context).

3.     Appellant contends that the trial court abused its discretion in denying his motion for a mistrial. We disagree.

A police investigator testified at trial that on the morning after the shooting of West and her baby, the investigator and other officers went to the home of Appellant's mother looking for Appellant. The following exchange occurred during the cross-examination of the investigator by counsel for Appellant's mother (i.e., Appellant's co-defendant):

> Q:     Why were you even at [Appellant's mother's] house that morning?
> A:     To search for her son, [Appellant]; to look for her son, [Appellant].
> Q:     You were aware he didn't live with her.
> A:     His address was listed – her address was listed as the primary address for him. We believed he did live at the address.
> Q:     At what point – where was it listed as the primary address for him?
> A:     In our –
> Q:     In the criminal juvenile report or something?

Appellant immediately objected and, during a bench conference, moved for a mistrial.

18

Appellant argued that the last question improperly put his character at issue and placed his "juvenile record" into evidence. Counsel for Appellant's mother explained that he was referring to a juvenile court proceeding regarding custody of her minor children, including Appellant, after she had a stroke. The trial court noted among other things that questions by attorneys are not evidence, that Appellant objected before the witness had a chance to respond, and that the word used was "report," not "record," which did not necessarily mean anything bad about Appellant. The court offered to instruct the jury that "any reference . . . to a juvenile proceeding refers to [Appellant's mother] and her involvement and not [Appellant]," but Appellant objected. The court denied Appellant's mistrial motion but asked Appellant to craft a curative instruction. Appellant complied, but both Appellant's mother and the State objected to Appellant's proposed instruction, which the court then declined to give.

Back in front of the jury, the trial court gave the following curative instruction:

I hereby instruct you and admonish you to disregard the last question asked of this witness. And I hereby order that it is stricken from the record. I hereby further instruct and admonish you that questions asked by attorneys are not evidence. Evidence includes the testimony of witnesses, exhibits admitted during the trial, and any stipulations agreed to by the parties. All right. Let the examination continue.

Whether to declare a mistrial is a question committed to the discretion of the trial court, and we will not reverse the trial court's judgment absent a showing of abuse of discretion. See *McKibbins v. State*, 293 Ga. 843, 848-850 (750 SE2d 314) (2013); *Isaac v. State*, 269 Ga. 875, 877 (505 SE2d 480) (1998). "A passing reference to a defendant's record does not place his character in evidence." *Isaac*, 269 Ga. at 877-878 (citations and punctuation omitted). As the trial court correctly noted, statements of counsel are not evidence, see *Simpkins v. State*, 303 Ga. 752, 757 n.4 (814 SE2d 289) (2018), and the witness did not confirm or deny the existence of a "criminal juvenile report." Moreover, the trial court struck the question and instructed the jury to disregard it. See *Favors v. State*, 305 Ga. 366, 370 (825 SE2d 164) (2019) ("Qualified jurors under oath are

20

presumed to follow the instructions of the trial court." (citation and punctuation omitted)). Under the circumstances of this case, we see no abuse of discretion.

4. Appellant asserts in three enumerations of error that he was denied the effective assistance of counsel. Two of his claims are waived under this Court's longstanding case law, but the third claim is not. Moreover, based on the current record, we cannot say that his third claim of ineffectiveness fails, and we cannot properly evaluate the claim due to the lack of findings below. Accordingly, we must vacate the trial court's judgment in part and remand the case for an evidentiary hearing on the ineffective assistance claim that is not waived.

(a) Appellant asserts that he received ineffective assistance of trial counsel, because his lead trial attorney, Kevin Gough, purportedly slept throughout significant portions of the trial. However, it is a "fundamental rule that ineffectiveness claims must be raised at the earliest practicable moment." *Wilson v. State*, 286 Ga. 141, 145 (686 SE2d 104) (2009). "[T]hat moment is before appeal

if the opportunity to do so is available. The pre-appeal opportunity is available when the convicted defendant is no longer represented by the attorney who represented him at trial." *Cowart v. State*, 294 Ga. 333, 337 n.6 (751 SE2d 399) (2013) (citations and punctuation omitted).

As stated above in footnote 1, Appellant was represented at trial by three attorneys – Kevin Gough, Jonathan Lockwood, and Ashley Wood. After his conviction and sentence, Appellant filed a motion for new trial, which he amended with his new counsel, attorney Katherine Mason, and the trial court held an evidentiary hearing on the new trial motion at which Gough testified. Appellant did not raise a claim of ineffective assistance of trial counsel based on Gough's alleged sleeping through portions of the trial either in his amended motions for new trial or at the motion for new trial hearing. Because he failed to raise this claim at the earliest practicable moment, he did not preserve it for appellate review. See, e.g., *Golson v. State*, 306 Ga. ___ (__ SE2d __) (2019); *King v. State*, 304 Ga. 349, 351 (818 SE2d 612) (2018); *Billings v. State*, 293 Ga.

22

99, 102-103 (745 SE2d 583) (2013).

(b) Appellant also asserts that he received ineffective assistance of counsel at the motion for new trial stage, because his motion-for-new-trial counsel, Mason, failed to support a specific claim of ineffective assistance of trial counsel based on Gough's alleged sleeping through portions of the trial. But this specific claim of ineffective assistance of trial counsel was not raised at the motion for new trial stage and was therefore waived.[5] See *Jones v. State*,

---

[5] Appellant's amended motion for new trial and second amended motion for new trial, which were filed by Mason, referred to ineffective assistance of trial counsel only in generalized terms. Specifically, the amended motion for new trial twice said: "[Appellant's] counsel was ineffective in his representation sufficient to rise to the level of a violation of [Appellant's] constitutional right to the effective assistance of counsel [for] such reasons as will be raised at the hearing on the Motion for New Trial." There was no additional detail or argument. Appellant's second amended motion for new trial similarly referred to ineffective assistance of trial counsel only in generalized terms: "Defendant further reserves the right to raise any issues related to ineffective assistance of counsel which may arise as a result of the hearing on the Motion for New Trial, Amended Motion for New Trial, or Second Amended Motion for New Trial." See *Jones v. State*, 294 Ga. 501, 503 (755 SE2d 131) (2014) (holding that a bare assertion of ineffective assistance of trial counsel in an amended new trial motion, "with no additional detail or argument," was insufficient to raise such a claim and preserve it for review on appeal). At the motion for new trial hearing, although Mason did question Gough on the issue of ineffective assistance, she did not ask him about his alleged sleeping through portions of the trial; instead, she asked Gough why he had not questioned the baby's mother at trial about a particular topic.

294 Ga. 501, 503 (755 SE2d 131) (2014). See also *Wilson*, 286 Ga. at 144 ("Where the issue of trial counsel's effectiveness has been raised on motion for new trial, any claims of ineffective assistance by trial counsel not raised at that time are waived." (citations and punctuation omitted)). We do not allow a defendant to resuscitate a specific claim of ineffective assistance of trial counsel that was not raised at the motion for new trial stage by recasting the claim on appeal as one of ineffective assistance of motion-for-new-trial counsel for failing to raise the specific claim of trial counsel's ineffectiveness. See id. "[I]ndulging such bootstrapping would eviscerate the fundamental rule that ineffectiveness claims must be raised at the earliest practicable moment and would promote serial appellate proceedings." *King*, 304 Ga. at 351 (citation and punctuation omitted). If Appellant wishes to pursue a claim that his

Mason said to Gough: "[M]y client [i.e., Appellant] wants to know why you didn't question [the baby's mother] about the preacher and his holding her hands, if you recall any of that." After a brief discussion, Mason said, "I believe that's all I have of Mr. Gough, Your Honor, [and] my client . . . says he has nothing further he wishes me to ask Mr. Gough about." Mason did not argue at the hearing – and the trial court's order denying the motion for new trial did not mention or rule on – any claim regarding Gough's alleged sleeping. See id.

motion-for-new-trial counsel was ineffective in this regard, he must do so through a petition for a writ of habeas corpus. See id.

(c) However, Appellant asserts a claim of ineffective assistance of motion-for-new-trial counsel that is not merely a camouflaged claim of ineffectiveness by trial counsel. Specifically, he contends that Mason provided ineffective assistance by filing an amendment to the motion for new trial seeking resentencing based on this Court's then-recent decision in *Veal* but then failing to gather and present at the hearing on the amendment allegedly readily available evidence showing that Appellant cannot constitutionally be sentenced to serve life without the possibility of parole for the baby's murder.

As recounted in footnote 1, after the motion for new trial hearing, but before the trial court entered an order on Appellant's new trial motion, this Court decided *Veal*, which explained that the United States Supreme Court "has now made it clear that LWOP sentences may be constitutionally imposed only on the worst-of-the-worst juvenile murderers," and that an LWOP sentence for a

25

juvenile murderer like Appellant must be supported by a "distinct determination on the record that [the defendant] is irreparably corrupt or permanently incorrigible, as necessary to put him in the narrow class of juvenile murderers for whom an LWOP sentence is proportional under the Eighth Amendment." *Veal v. State*, 298 Ga. 691, 702-703 (784 SE2d 403) (2016). On March 24, 2016, three days after the decision in *Veal*, Mason filed an amendment to Appellant's new trial motion that cited *Veal* and asked the trial court to resentence Appellant to serve life in prison with the possibility of parole for the baby's murder. Appellant also requested a hearing, and several months later, on September 9, 2016, the trial court held a brief evidentiary hearing. On July 12, 2017, the court entered a detailed order citing *Veal* and denying Appellant's new trial motion as amended. In response to a motion by Appellant, the trial court extended the deadline to file a notice of appeal. On August 17, 2017, Appellant, assisted by new counsel Josh Moore (who is also Appellant's attorney in this appeal), filed in the trial court an "Emergency Motion" to reconsider, vacate, or stay enforcement of

the order denying his new trial motion and to reopen the evidence. The Emergency Motion asserted among other things that Mason provided ineffective assistance in connection with Appellant's request for resentencing and the subsequent evidentiary hearing. Four days later, on August 21, 2017, the trial court denied the Emergency Motion without a hearing.

The State concedes, and we agree, that Appellant raised this claim of ineffective assistance of motion-for-new-trial counsel at the earliest practicable moment after Moore took over as counsel. See *Anthony v. State*, 302 Ga. 546, 554 (807 SE2d 891) (2017) (explaining that the defendant preserved his ineffective assistance of post-trial counsel claims, which were not based on a waived claim of ineffective assistance of trial counsel, because his appellate counsel did not represent him prior to the appeal). See also *Terrell v. State*, 300 Ga. 81, 87 n.6 (793 SE2d 411) (2016). When there has been no evidentiary hearing in the trial court on a preserved claim of ineffective assistance of counsel, this Court generally must remand the case to the trial court for an evidentiary hearing on the issue.

See id. See also, e.g., *Rucker v. State*, 268 Ga. 406, 408 (489 SE2d 844) (1997). A remand is not mandated if we can determine from the record that a defendant cannot establish ineffective assistance under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). See *Anthony*, 302 Ga. at 554; *Wilson*, 286 Ga. at 145. However, that is not the case here, and we therefore must remand the case for an evidentiary hearing and appropriate findings concerning Appellant's preserved claim of ineffective assistance of motion-for-new-trial counsel.

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.*

Decided June 28, 2019.

Murder. Glynn Superior Court. Before Judge Kelley.

*Josh D. Moore*, for appellant.

*Jacquelyn L. Johnson, District Attorney, Thomas E. Buscemi, Andrew J. Ekonomou, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.

*Kilpatrick Townsend & Stockton, Curtis A. Garrett, Jr.; Sarah E. Geraghty, Patrick Mulvaney, Tamara S. Caldas*, amici curiae.