311 Ga. 329
FINAL COPY

S21A0253.  BEDFORD v. THE STATE.
S21A0254.  BROOKS v. THE STATE.

McMILLIAN, Justice.

Million Bedford and Yaheed Brooks were tried together and convicted of malice murder and other crimes in connection with the shooting death of Johnny Jackson.[1] On appeal, they each contend

---

[1] The crimes were committed on April 8, 2017. On July 31, 2017, an Emanuel County grand jury indicted Bedford, Brooks, and three co-indictees on one count of malice murder (Count 1), two counts of felony murder, predicated on aggravated assault and armed robbery, respectively (Counts 3 and 5), one count of armed robbery (Count 7), one count of burglary in the first degree (Count 9), and five counts of possession of a firearm during the commission of a felony (Counts 2, 4, 6, 8, and 10). Bedford and Brooks were tried together on April 10 and 11, 2018, and found guilty on all counts. Bedford and Brooks were each sentenced to serve life in prison without the possibility of parole for malice murder, another concurrent life sentence in prison without the possibility of parole for armed robbery, 20 years in prison to be served consecutively for burglary, and a total of 15 years in prison for the three remaining counts of possession of a firearm, also to be served consecutively. The felony murder convictions and the two firearm possession convictions based on the felony murder counts were vacated by operation of law.

After Bedford was sentenced on May 21, 2018, he timely filed a motion for new trial, which he amended on October 22, 2019. After a hearing, the trial court denied his amended motion on November 27, 2019. On May 10, 2018, Brooks filed a motion for new trial, which he amended on June 27, 2019. After a hearing, the trial court denied his amended motion on February 4, 2020.

that there was insufficient evidence to sustain their convictions and that the trial court erred in denying a mistrial due to the State's improper comment about courtroom spectators during its closing argument. Separately, Bedford claims that the trial court erred by denying his motion for directed verdict of acquittal and by admitting his pretrial statements. Brooks argues that a detective witness improperly bolstered other witnesses' testimony and that the trial court abused its discretion by failing to allow him to supplement his motion for new trial with new claims and by not setting an evidentiary hearing on the supplemental motion. We affirm the convictions in both cases.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed that the appellants' co-indictees, Shauntequia Bell, Emily Prescott, and Sanantonio Young, devised a plan to rob Jackson in order to get money for rent. Prescott had previously traded sex with Jackson to pay for Bell's jail bond and

Bedford and Brooks filed timely notices of appeal. These cases were docketed to the term of court beginning in December 2020 and submitted for a decision on the briefs.

saw cash while in Jackson's house. Bell and Prescott planned for Young to rob Jackson while Bell distracted him by pretending that she would exchange sex for money.

On April 8, 2017, Bell texted Jackson that she would come over that evening. Jackson's ex-wife testified that Jackson was intoxicated that day, and his neighbors testified that he canceled their plans to have a fish fry because he said that he would be hosting a female guest. Bell, Prescott, and Young arrived at Jackson's house after 7:00 p.m. Bell testified that she went inside while Young and Prescott remained in Young's car. Around 7:50 p.m., Jackson and Bell drove Jackson's truck to a nearby convenience store. While inside the store, Bell advised Prescott and Young via text message to begin robbing Jackson's house, but when Bell and Jackson returned to Jackson's house, Young and Prescott were neither inside the house nor waiting outside.

Instead, Young and Prescott were headed to Statesboro where Young said that he had to pick up "his brothers." At 8:28 p.m., security camera footage at an apartment complex showed them

3

picking up 16-year-old Bedford, who was Young's cousin, and 24-year-old Brooks. Prescott, Young, Bedford, and Brooks drove to another apartment to get gas money and then to get gas. Prescott testified, and security camera footage from the gas station showed, that Bedford pumped gas into Young's car while Brooks paid inside at 8:48 p.m. Prescott and Bell continued to communicate over text messages while the four drove to Jackson's house. Once they arrived, Prescott testified that Young stayed in his car while Prescott, Bedford, and Brooks entered the house and began searching for money.

Bell testified that while she was with Jackson in the bedroom, Young texted her that the robbery was about to occur and that she should distract Jackson. After searching for money, Bedford, Brooks, and Prescott went into the bedroom, where Bedford pulled out a gun. Surprised, Jackson asked who they were and what they were doing in his house, and Brooks told Bedford to hit Jackson with the gun, which Bedford did. After being struck, Jackson attempted to get back up. Brooks yelled at Bedford to shoot Jackson, and

4

Bedford shot him multiple times. Bedford and Brooks then left the house and reentered Young's car. Prescott continued to search for money inside, and Bell wiped down items in the home that she thought they might have touched.

Jackson's neighbor testified that she heard loud booms coming from Jackson's house between 9:15 and 9:20 p.m., and about five minutes later, she saw a car that matched the description of Young's car speed off from where it had been parked. Bell and Prescott testified that the five split the money they stole, which was between four and five hundred dollars. Young, Bedford, and Brooks dropped off Bell and Prescott at their shared apartment. Jackson's son discovered his father's body the next day with four gunshot wounds and injuries to his face from blunt force trauma.[2]

1. Bedford and Brooks argue that the evidence presented at trial was insufficient for a rational jury to find them guilty beyond a

---

[2] Young pleaded guilty, received a life sentence without parole for the felony murder of Jackson, and testified for the State. Bell and Prescott also testified for the State and were permitted to plead guilty to voluntary manslaughter due to their cooperation.

reasonable doubt on each count of the indictment for which they were convicted. Bedford also argues that the trial court erred in denying his motion for directed verdict of acquittal. See *Smith v. State*, 304 Ga. 752, 754 (822 SE2d 220) (2018) (standard of review for denial of directed verdict is the same as for determining sufficiency of the evidence). We conclude that both claims lack merit.

On appeal, a criminal defendant is no longer presumed innocent, and we review whether the evidence presented at trial, when viewed in the light most favorable to the jury's verdict, authorized the jury to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." *Frazier v. State*, 308 Ga. 450, 452-53 (2) (a) (841 SE2d 692) (2020) (citations and punctuation omitted).

Under OCGA § 16-2-20, criminal liability is imposed on a

defendant as a party to the crimes when a defendant intentionally causes another person to commit crimes, intentionally aids in the commission of crimes, or intentionally advises, encourages, hires, counsels, or procures another to commit crimes. Generally, the testimony of a single witness is sufficient to establish a fact, but in felony cases where the only witnesses are accomplices, the accomplice's testimony must be corroborated by other evidence. See OCGA § 24-14-8; *State v. Johnson*, 305 Ga. 237, 240 (824 SE2d 317) (2019). "[I]t is well settled that an accomplice's testimony may be corroborated by the testimony of another accomplice." *Jordan v. State*, 307 Ga. 450, 455 (3) (836 SE2d 86) (2019).

Prescott testified that she, Young, and Bell devised a plan to rob Jackson. On the evening of the crimes, she and Young dropped off Bell at Jackson's house, picked up Bedford and Brooks, and drove them to Jackson's house, where she, Bedford, and Brooks entered to search for money. After they went into Jackson's bedroom to ask Jackson where he kept his money, Prescott saw Bedford hit Jackson with the gun and shoot him. Likewise, Bell testified that she and

7

Prescott planned to rob Jackson with Young's help and that at Jackson's house, she witnessed Bedford pulling out a gun, Brooks telling Bedford to hit Jackson with the gun and then to shoot him, and Bedford complying with those directives. Afterward, all five split the stolen money. This accomplice testimony was mutually corroborating as to the plan to rob Jackson and his beating and shooting. It was further corroborated by the security videos from the apartment complex and gas station and the neighbor's testimony about hearing loud booms coming from Jackson's house around the time of the shooting and seeing Young's car leave the scene. Thus, the evidence was more than sufficient as a matter of constitutional due process and as a matter of Georgia statutory law to convict both Bedford and Brooks of the crimes for which they were charged, as well as to deny Bedford's motion for directed verdict of acquittal. See *Jordan*, 307 Ga. at 455 (3) (testimony of accomplice girlfriends corroborated by each other and jailhouse admission).

2. Both appellants contend that they were denied a fair trial when, during the State's closing argument, the prosecutor told the

8

jury that they "had other people here who knew them quite well . . . who left after they heard [Young]'s statement to make sure. Remember how I said they were dangerous." Neither defense counsel objected at the time, but after the prosecutor finished his closing argument and the jury left the courtroom, Bedford moved for a mistrial based on these remarks. Brooks joined in the motion on the grounds that the prosecutor was referring to unidentified courtroom spectators, no evidence was presented that they were observing the trial in order to intimidate Young, and the comment was made to unduly inflame the jury. In denying the motion for mistrial, the trial court found that these remarks were not harmful enough to merit a mistrial.

Although we do not condone the prosecutor's statements, which were not based on the evidence presented at trial, it is not necessary to resolve whether the trial court properly denied the motion for mistrial. Because Bedford and Brooks moved for a mistrial after, not contemporaneously with, the State's improper closing argument, the motion was untimely and the issue was not preserved for appellate

review. See *Cowart v. State*, 294 Ga. 333, 337 (3) (751 SE2d 399) (2013) ("[The defendant's] motion for mistrial, made after the prosecutor's closing argument ended, [was] not timely, and he therefore failed to preserve this issue for appeal."); *Andrews v. State*, 293 Ga. 701, 704 (4) (749 SE2d 734) (2013) (argument waived on appeal where defendant did not make contemporaneous objection to State's closing argument mentioning defendant's "dangerousness"); see also *Gates v. State*, 298 Ga. 324, 328-29 (4) (781 SE2d 772) (2016) (explaining that under current Georgia law, plain error review is not available for improper remarks made during closing argument).

3. Separately, Bedford contends that the trial court erred by improperly considering his prior juvenile record in determining whether his pretrial statement in this case, made when he was 16 years old, could be admitted at trial under *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976). However, any error in inquiring about the juvenile record was harmless because the trial court ultimately relied upon and applied the correct factors in admitting the statement.

10

About five weeks after the shooting, Bedford's aunt, a probation officer, dropped Bedford off at a police station, where he was interviewed by two GBI agents. The agent went through a *Miranda*[3] waiver form with Bedford, asked him about the night of Jackson's murder, and informed him of the warrant issued for his arrest for the murder. The agent testified that Bedford was not in distress or injured during the interview, which was less than an hour long, and that he appeared to understand the questions asked. Bedford did not ask for anyone to be present during the interview until, at its conclusion, he invoked his right to an attorney.

Bedford filed a motion to suppress his statements from this interview on the grounds that the statements were not knowingly and voluntarily made. At the hearing on the motion, Bedford's counsel advised the trial court of the nine-factor test under *Riley* for evaluating whether a juvenile defendant knowingly and voluntarily waived his constitutional rights when speaking with law enforcement officers, and he asserted that given Bedford's age, the

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

11

length of the interview, and that no parent or other adult was present at the interview, the court should suppress the statement. In a colloquy with the State, the trial court asked about Bedford's experience with the criminal justice system and whether he had any prior convictions, and the prosecutor responded that Bedford had no prior convictions and that he might have a juvenile record, "but, obviously, that's not pertinent to this particular" case. After the court noted that being in and out of juvenile court would be pertinent to Bedford's level of maturity in dealing with the criminal justice system, Bedford's counsel said that Bedford "may have never even seen the inside of a courtroom in juvenile court," and that the court could not know based on the testimony presented at the hearing. The trial court agreed with this statement and then orally denied Bedford's motion to suppress, expressly relying on the *Riley* factors and without referencing Bedford's juvenile record.

In evaluating whether a juvenile defendant knowingly and voluntarily waived his rights during an interrogation, the State bears the burden of showing by a preponderance of the evidence that

the juvenile understood and waived his rights under "the totality of the circumstances," and the court must consider nine factors in making that determination:

> (1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends[,] or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogation; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extra judicial statement at a later date.

*Lester v. State*, 310 Ga. 81, 85 (2) (849 SE2d 425) (2020) (citing *Riley*, 237 Ga. at 128). Although we independently apply the law to the facts, the trial court's determinations and factual findings must be upheld on appeal unless clearly erroneous. Id. at 86 (2).

Even if the trial court improperly probed into Bedford's juvenile history, this inquiry was harmless because the trial court grounded its denial of Bedford's motion to suppress on the *Riley* factors, without relying on the possibility that Bedford had

13

experience with juvenile detention, including that despite Bedford's youth and low level of education, he was informed of the charges against him and his *Miranda* rights, was not held incommunicado or for a very long time, was not prohibited from consulting with relatives or an attorney, and was not abused or oppressed during the questioning. Because these findings were not clearly erroneous and the trial court properly relied upon the *Riley* factors, we see no error in the trial court's denial of Bedford's motion to suppress.

4. Separately, Brooks asserts that he was denied a fair trial when a GBI agent improperly bolstered Young's credibility by commenting twice on the truth of Young's prior statements. But because Brooks did not object to the detective's testimony at trial,[4] this issue was not preserved for ordinary appellate review and therefore can only be reviewed for plain error. See OCGA § 24-1-103 (d). To establish plain error, Brooks must "identify an error that was

---

[4] Brooks briefly argues that his trial counsel was ineffective for not objecting to or moving to strike the GBI agent's testimony. However, as discussed in Division 5 (c) below, he did not raise trial counsel's ineffective assistance at the earliest practicable moment and has thus waived this claim on appeal. See *Martin v. State*, 306 Ga. 538, 546 (6) (832 SE2d 402) (2019).

14

not affirmatively waived, was clear and not open to reasonable dispute, likely affected the outcome of the proceeding, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Thompson v. State*, 304 Ga. 146, 151 (6) (816 SE2d 646) (2018).

Young changed his story multiple times throughout the investigation and trial, alternatively naming as the shooters unidentified people, as well as Bedford and Brooks, and also taking the blame himself. At trial, when defense counsel cross-examined the GBI agent who interviewed Young, counsel suggested that Young only told the story implicating Bedford and Brooks and minimized his own involvement because he hoped to obtain a favorable plea deal. In response, the GBI agent said:

> Um, . . . *he was telling more of the truth at that time* based off of the corroboration of the . . . other witnesses. . . . [W]e never went back and told the young ladies exactly what he said. We had them to regurgitate what they knew at that time. And the last interview that we had with him on May 24th his story was very consistent with the girls'. We didn't tell him what the girls said . . . . [T]hey flowed and it was corroborated with like, say, for instance, money being needed to go get the gas, having to have cash, things

15

of that nature just was consistent with the interview. *It was — the truth stays very similar*.

(Emphasis supplied.) On appeal, Brooks argues that the GBI agent's two references to "the truth" of Young's prior statements constituted improper bolstering.

Starting with the second reference to "the truth," the State contends, and we agree, that, in context, the testimony did not speak directly to Young's truthfulness. Rather, it addressed whether Young's statements were consistent with other evidence and established that from an investigative standpoint, statements consistent with other evidence are generally considered more accurate. Thus, that reference did not constitute improper bolstering, and there was no plain error in admitting that testimony. See *Brown v. State*, 302 Ga. 454, 460-61 (2) (b) (807 SE2d 369) (2017) (statement that "in interviewing suspects, oftentimes 'it'll take several hours to get to the actual ultimate truth'" was not bolstering but an explanation that "in general, when interviewing suspects, they often make inconsistent statements and it often takes

16

considerable time to get them to provide the complete story")
(punctuation omitted); *Jones v. State*, 299 Ga. 40, 44 (3) (785 SE2d
886) (2016) (no plain error in admitting testimony from investigator
about evidence that she obtained and how it lined up with
information provided by the witness).

In contrast, the State does not contest that the first reference
to "the truth" improperly bolstered the credibility of Young's prior
statements. However, even assuming that the trial court clearly
erred by permitting the testimony, Brooks must also meet the other
prongs of the plain error test to obtain relief, and that he cannot do.
Young's pretrial statements that Bedford and Brooks were
responsible for shooting Jackson were cumulative of strong,
independent evidence of their guilt from Prescott's and Bell's
testimony. Under these circumstances, because it was unlikely that
the GBI agent's comment on the truthfulness of Young's prior
statements affected the outcome of the trial, we conclude that the
trial court did not commit plain error in admitting this testimony.
See *McGarity v. State*, 311 Ga. 158, 168 (3) (856 SE2d 241) (2021)

17

(admission of bolstering testimony was harmless because "there was ample evidence independent of [the] testimony to support the jury's verdicts on all the counts involving [the victim's] murder"); *Davis v. State*, 307 Ga. 746, 751 (2) (b) (838 SE2d 263) (2020) (admission of bolstered testimony was harmless where State presented strong independent evidence of guilt); cf. *Mosley v. State*, 298 Ga. 849, 852-53 (2) (b) (785 SE2d 297) (2016) (no plain error because the challenged hearsay testimony was cumulative of properly admitted evidence).

5. Finally, Brooks asserts that the trial court erred in not permitting him to add claims of ineffective assistance of counsel to his motion for new trial. Brooks's trial counsel filed a bare-bones motion for new trial, which was amended by motion-for-new-trial counsel. At the hearing on the amended motion, Brooks's trial counsel was called to testify, but when the court asked Brooks's new counsel whether there were any claims of trial counsel's ineffective assistance, Brooks's motion-for-new-trial counsel said that there were not. The trial court denied Brooks's motion for new trial as

amended on February 4, 2020.

On February 17, motion-for-new-trial counsel emailed the trial court and requested that the court reconsider its denial of Brooks's motion for new trial "and/or" permit her to file, and then immediately deny, a supplement to the motion for new trial raising ineffective assistance of trial counsel as an additional ground. Counsel acknowledged that she had declined to raise the ineffective assistance of trial counsel at the motion-for-new-trial hearing, but in her email, she stated, "I myself was ineffective for failing to raise this issue and would argue it against myself if the law permitted me to do so." On February 20, she filed a motion seeking leave to supplement the motion for new trial to add the ground of ineffective assistance of trial counsel, attaching a supplement explaining why trial counsel was allegedly ineffective.

On March 3, the trial judge responded to motion-for-new-trial counsel by email and told her that she needed to file a motion for reconsideration because he did not think he could, "after entering an order, simply allow an amendment or supplement." The next day,

19

motion-for-new-trial counsel filed a notice of appeal but did not move for reconsideration or otherwise respond to the court's email. On March 17, the judge emailed again, acknowledging receipt of the motion for leave but warning counsel that she needed to file a motion to vacate or reconsider before the end of the term of court. A month later, Brooks was appointed new appellate counsel.

(a) First, Brooks argues that the trial court erred by not ordering an evidentiary hearing in response to Brooks's motion seeking leave to supplement his motion for new trial because, until a notice of appeal was filed, the trial court still had jurisdiction to allow amendments to the motion for new trial, despite its prior denial of the motion. Although Brooks is correct that the trial court retained jurisdiction over the case at that time, see *State v. Hood*, 295 Ga. 664, 664 (763 SE2d 487) (2014), the trial court's continuing jurisdiction does not answer whether Brooks was entitled to supplement his motion for new trial at that time. We conclude that he was not. Under OCGA § 5-5-40 (b), motions for new trial may only be amended as of right *before* the trial court rules on the motion. See

20

*Hinkson v. State*, 310 Ga. 388, 397-98 (4) (850 SE2d 41) (2020) (defendant's purported second amended motion for new trial was untimely because it was filed after the trial court denied his motion for new trial). A motion for new trial may not be amended as of right *after* the trial court has ruled on it. *Haggard v. State*, 273 Ga. App. 295, 296 (614 SE2d 903) (2005). Here, because Brooks attempted to amend the motion for new trial after the trial court issued an order denying it, the trial court acted well within its discretion in declining to vacate the denial order sua sponte and accept the proposed supplemental motion unless a motion to vacate or motion to reconsider the denial was first filed and granted.

(b) Brooks further asserts that his motion for leave was in substance a motion to reconsider or vacate because it "put the court on notice as to the problem, the remedy sought, and the court's obligation to afford appellant a hearing and due process as a result thereof," and therefore the trial court erred in not ruling on it. As an initial matter, even if the motion for leave could be considered a motion for reconsideration, the trial court was not permitted to rule

on the motion under these circumstances where Brooks elected to file a notice of appeal, which divested the trial court of jurisdiction. See *Hood*, 295 Ga. at 664. And although Brooks is correct that the substance and function of a motion controls rather than its nomenclature, see *State v. Mondor*, 306 Ga. 338, 340 (1) (830 SE2d 206) (2019), the motion for leave did not ask the court to vacate or reconsider the denial of the motion for new trial, so the trial court reasonably read it to be a motion for leave, rather than a motion for reconsideration, and advised motion-for-new-trial counsel to file the proper motion. Because we are not persuaded that the motion to leave functioned as a motion to vacate or for reconsideration, we discern no error in the trial court's failure to permit Brooks to supplement his claims.

(c) Next, Brooks argues that he did not waive his claims that his trial counsel was constitutionally ineffective because his failure to raise his trial counsel's ineffectiveness was due to the ineffective assistance of his motion-for-new-trial counsel. We are unconvinced. "Claims of trial counsel ineffectiveness must be raised at the earliest

practicable opportunity." *Terrell v. State*, 300 Ga. 81, 86-87 (3) (793 SE2d 411) (2016). Here, Brooks not only had the opportunity to raise claims of ineffective assistance of trial counsel in his motion for new trial and even called trial counsel to testify at the hearing, but his motion-for-new-trial counsel expressly declined to assert such claims when asked by the trial court. Thus, Brooks's claims of ineffective assistance of trial counsel are procedurally barred for failure to assert them at the first practicable opportunity.

Although Brooks argues that his motion-for-new-trial counsel's ineffective assistance precluded him from asserting the ineffective assistance of trial counsel, a claim alleging the ineffective assistance of post-conviction counsel must not be "merely a camouflaged claim of ineffectiveness by trial counsel." *Elkins v. State,* 306 Ga. 351, 362 (4) (c) (830 SE2d 217) (2019). Although Brooks has raised his motion-for-new-trial counsel's ineffective assistance at the earliest opportunity, his claims are entirely dependent on claims against his trial counsel, and

we do not allow a defendant to resuscitate a specific claim

of ineffective assistance of trial counsel that was not raised at the motion-for-new-trial stage by recasting the claim on appeal as one of ineffective assistance of motion-for-new-trial counsel for failing to raise the specific claim of trial counsel's ineffectiveness. Indulging such bootstrapping would eviscerate the fundamental rule that ineffectiveness claims must be raised at the earliest practicable moment and would promote serial appellate proceedings. If Appellant wishes to pursue a claim that his motion-for-new-trial counsel was ineffective in this regard, he must do so through a petition for a writ of habeas corpus.

Id. at 362 (4) (b) (cleaned up).

Therefore, we discern no error by the trial court in not permitting Brooks to amend his motion for new trial to add claims of ineffective assistance of counsel after denying the motion for new trial, even though Brooks asserts that motion-for-new-trial counsel was ineffective for failing to raise those claims in a timely fashion.[5] For the foregoing reasons, we affirm both Bedford's and Brooks's

---

[5] For similar reasons, we deny Brooks's motion to remand for an evidentiary hearing on his ineffective assistance of counsel claims. See *Terrell*, 300 Ga. at 87 (3) ("Only where no opportunity existed for the defendant to raise an ineffectiveness claim prior to appeal have cases been remanded for a hearing."); *Wilson v. State*, 286 Ga. 141, 144 (4) (686 SE2d 104) (2009) (only where claims of ineffective assistance of counsel are not procedurally barred is remand justified).

convictions.

*Judgments affirmed. All the Justices concur.*

Decided April 19, 2021.

Murder. Emanuel Superior Court. Before Judge Reeves.

*Jack M. Downie*, for appellant (case no. S21A0253).

*Bentley C. Adams III, Kathleen Strang*, for appellant (case no. S21A0254).

*S. Hayward Altman, District Attorney, John A. Fitzner III, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.