307 Ga. 746
FINAL COPY

S19A1432.  DAVIS v. THE STATE.

BOGGS, Justice.

In 2012, Sylvester Davis, Jr., was convicted of malice murder in connection with the shooting death of Marquis Wadley. Davis appeals, arguing that the trial court abused its discretion in admitting certain testimony by a Georgia Bureau of Investigation ("GBI") agent and in denying his motion for a mistrial, and that, to the extent that this Court concludes that he waived certain evidentiary objections by failing to raise them at trial, his trial counsel rendered ineffective assistance. We affirm.[1]

---

[1] Wadley was killed on July 12, 2011. On August 20, 2012, a Treutlen County grand jury indicted Davis for malice murder, two counts of felony murder, attempted armed robbery, and aggravated assault. Law enforcement officers also arrested Jonathan Wright — Davis' older brother — for the shooting, and he agreed to testify against Davis in exchange for a plea deal. At a trial from December 10 to 12, 2012, the jury acquitted Davis of attempted armed robbery and the associated felony murder charge, but found him guilty of malice murder, felony murder predicated on aggravated assault, and aggravated assault. The trial court sentenced Davis to serve life in prison without parole for malice murder. The trial court also entered sentences on the other two guilty verdicts but later recognized that the felony murder guilty

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed as follows. Davis lived with his older brother Jonathan Wright at their grandmother's house in Soperton. On the afternoon of July 11, 2011, Davis texted Wadley seeking to buy some cocaine and marijuana and asked Wadley to contact him. Wadley did not respond.

The next morning, Davis texted Wadley again about buying drugs, and this time Wadley responded. Davis asked Wadley to bring the drugs to Davis' grandmother's house and described the location. Wadley replied that he was at work, and Davis said that he would wait for Wadley to come over. That afternoon, Davis twice texted Wadley to make sure that he was coming over, and both times Wadley said that he was. Davis told S. B., his then-girlfriend, who was a minor at the time, that someone was supposed to come over to

verdict was vacated by operation of law and merged the guilty verdict for aggravated assault into the malice murder conviction. On December 26, 2012, Davis filed a motion for new trial, which he amended with new counsel on March 17, 2017, and again on April 20, 2018. After two evidentiary hearings, the trial court denied the motion on May 8, 2019. Davis then filed a timely notice of appeal. The case was docketed in this Court for the August 2019 term and orally argued on November 7, 2019.

his house that day, and that "[i]f he comes, it's going to be through for him."

At 5:59 p.m., Davis texted Wadley to say that he was still waiting. At 6:01 p.m., Wadley replied, "K, on the way." A few minutes later, one of Wadley's cousins saw Wadley pull into the driveway at Davis' grandmother's house. Another cousin, Sandra Baker, also was in the area on her way to a convenience store and saw Wadley pull into the driveway. At 6:07 p.m., Wadley texted Davis and said, "I'm here with the slabs."[2] Davis told Wright that Wadley was there and went outside to talk to Wadley. Davis had an old Smith & Wesson .32 caliber revolver — which S. B.'s brother had previously seen him with — that he took with him to greet Wadley. On her way back from the convenience store, Baker, who knew Davis, saw him standing outside the front passenger-side door of Wadley's car talking to Wadley. Minutes later, Davis pulled out his revolver and shot Wadley — who was unarmed — twice in the head.

---

[2] An experienced law enforcement officer testified that "slabs" is slang for illicit drugs.

According to Wright, Davis ran into the house and told Wright, "I f**ked up. I burned a man," which Wright understood to mean that he shot someone. Wright went outside to see what had happened and saw Wadley slumped over in his car, dying. Wright went back inside and got a bedsheet, which he brought out and put over Wadley before lifting Wadley out of the driver's seat and putting him into the trunk of the car. Wright then drove Wadley's car, with Davis riding in the front passenger seat, to Vidalia, where Davis and Wright abandoned the car on the side of a road. Davis and Wright then walked to downtown Vidalia and caught a taxi back to Soperton. The taxi driver, who identified Davis at trial, dropped them off "out by the railroad tracks" in Soperton, and they then walked back to their grandmother's house.

Around 7:00 the next morning, Wadley's father went to Davis' grandmother's house looking for Wadley and spoke to Davis and Wright. Davis admitted that Wadley had been there the day before and said that Wadley had sold him "some dust." Once Wadley's father left, Davis and Wright left Soperton. Wadley's body was

4

discovered in the trunk of his abandoned car in Vidalia later that morning.

On the afternoon of July 13, Davis texted S. B., "We need to talk about something and this is between me and you." S. B. texted back, asking what it was about and suggesting that it must not be that important, and Davis replied, "It's about my f**king life, [S. B.]. Do you want to be with me?" S. B. apologized and again asked what it was about, and Davis texted, "It's about me, but you have to promise me on everything this will be our secret and erase all these texts." S. B. sent Davis several texts trying to learn more, and Davis replied, "I'm going to call you and tell you, babe, tonight. I promise I'm going to tell you. Just keep your mouth closed if you love me."

On the night of July 13, Davis spoke with S. B. by telephone. According to S. B., Davis asked if she knew Wadley, and she said no. Davis told S. B. that Wadley had been killed and that people were saying that Davis and Wright had killed him. At first, Davis said that he did not do it, but then he said, "we didn't mean to . . . do it that way. . . . It wasn't supposed to happen like that." Davis claimed

that Wadley had tried to hurt him and said that he was not going to let Wadley do anything to him. Davis also asked S. B. to run away with him.

The medical examiner who performed Wadley's autopsy found no defensive wounds, and the only injuries to the body were the two gunshot wounds. The medical examiner extracted two .32 caliber bullet fragments from Wadley's head. Five days after the shooting, Davis and Wright turned themselves in to authorities in Dublin, Georgia. Davis elected not to testify at trial. The defense theory was that Wright rather than Davis was the shooter.

Although Davis does not challenge the sufficiency of the evidence to support his conviction, consistent with our usual practice, we have reviewed the evidence presented at trial and summarized above and conclude that it was sufficient to permit a reasonable jury to find — as this one did — that Davis was guilty beyond a reasonable doubt of malice murder. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

6

2.    Davis argues that the trial court erred in allowing the State to elicit certain testimony from GBI Special Agent Kendra Lynn, the lead investigator on the case. We address those arguments in turn below.

(a)    First, Davis contends that the trial court erred in allowing Lynn to testify that she interviewed more than 30 people and that her focus narrowed on Davis as a potential suspect "[f]rom information we learned from witnesses." The State responded, and the trial court ruled, that Lynn's testimony was admissible to explain her course of conduct during the investigation.

Davis' trial took place in December 2012, when the old Evidence Code was still in effect. With respect to the admissibility of evidence regarding an investigating officer's conduct, we explained:

> It will be seen that only in rare instances will the "conduct" of an investigating officer need to be "explained," as in practically every case, the motive, intent, or state of mind of such an officer will not be "matters concerning which the truth must be found." At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did

it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something.

*Teague v. State*, 252 Ga. 534, 536 (314 SE2d 910) (1984). Applying that rule in *Teague*, we held that it was error for the trial court to permit the State to elicit testimony from the investigating officer as to a conversation that officer had with a third party "for the limited purpose of explaining the officer's conduct in the continuing investigation" of a robbery, because such information was not relevant to determining the defendant's guilt or innocence. (Citation and punctuation omitted.) Id. at 536-537. However, we ultimately affirmed the defendant's conviction, holding that the error was harmless because other witnesses testified in accord with the officer's testimony. As such, we concluded that the officer's testimony was "merely cumulative," and thus it was highly probable that its admission did not contribute to the verdict. Id. at 537.

Based on the foregoing, the trial court in this case erred in admitting the challenged testimony on the theory that it was necessary to explain Lynn's course of conduct during the

8

investigation, as that information simply was not relevant to determining Davis' guilt or innocence. As in *Teague*, Lynn's investigatory actions did not need to be explained, given that Davis did not attack or otherwise question the nature or adequacy of Lynn's investigation before Lynn gave the challenged testimony on direct examination.[3] See id. Compare *Adkins v. State*, 301 Ga. 153, 160 (800 SE2d 341) (2017) (no abuse of discretion in allowing officer to explain why he conducted investigation the way he did after defense raised questions about his investigation).

To reverse Davis' conviction, however, the error must have been harmful. See *Cowart v. State*, 294 Ga. 333, 341 (751 SE2d 399) (2013). As Davis conceded in his opening statement, there was ample evidence that Wadley was murdered at the house where Davis was staying; that Wadley died from two gunshot wounds to

---

[3] Davis also contends that this testimony violated his right to confront his accusers. This argument fails for the simple reason that Lynn did not testify to the substance of what any of the more than 30 witnesses told her. See *Allen v. State*, 296 Ga. 785, 788 (770 SE2d 824) (2015) (holding that right to confront accusers was not violated where "no substance of any supposed statements was placed before the jury by the detectives' reference").

9

the head from a .32 caliber revolver; that his body was stuffed in the trunk of his car, which was abandoned in Vidalia; that on the night of the murder, Davis and Wright took a taxi from Vidalia back to Soperton, and had their driver drop them off not at their home, but near some railroad tracks; and that after the murder, Davis and Wright left town. Moreover, even though Davis denied that he participated in the shooting, pointing the finger at Wright, text messages properly admitted into evidence at trial showed that Davis was the one who asked Wadley to come over, not Wright; one of Wadley's cousins testified that she saw Davis outside talking to Wadley shortly before Wadley was shot; and a man whose sister once dated Davis testified that he saw Davis with an old small-caliber revolver, which was consistent with physical evidence that .32 caliber bullets killed the victim and testimony that the fatal bullets were likely fired from a revolver. Moreover, the jury was charged on parties to a crime under OCGA § 16-2-20. And the challenged testimony by Lynn was merely that her interviews focused her on Davis as a potential suspect, which was an obvious point given that

10

she ultimately arrested him. In light of the strong evidence supportive of Davis' malice murder conviction, we conclude that the error in admitting the challenged testimony by Lynn did not contribute to the verdict. Therefore, the error was harmless. See *Cowart*, 294 Ga. at 342.

(b) Next, Davis argues that the trial court erred in permitting Lynn to testify to prior consistent statements that both Wright and S. B. made to her, as that testimony inappropriately bolstered the credibility of those witnesses. We agree that the trial court abused its discretion in admitting this testimony, but we again conclude that the errors were harmless.

Lynn testified near the beginning of trial, before the State had called Wright or S. B. The State elicited testimony from Lynn regarding a number of prior statements Wright and S. B. had made to her. Most of those statements were consistent with Wright's and S. B.'s eventual trial testimony and incriminated Davis. Trial counsel objected to those particular portions of Lynn's testimony on the grounds that they were hearsay and would improperly bolster

11

both Wright's and S. B.'s credibility. The trial court overruled counsel's objections and stated that it would allow Lynn's testimony not for the truth of the matter asserted therein, but only to explain her conduct during her investigation. For the reasons stated above, the trial court incorrectly admitted Lynn's testimony to explain her conduct. And as we explain below, Wright's and S. B.'s prior statements were not admissible as prior consistent statements.

Under the old Evidence Code, a witness' prior consistent statements were admissible at trial only where (1) the veracity of a witness' trial testimony had been placed in issue at trial; (2) the witness was present at trial; and (3) the witness was available for cross-examination. See *Baugh v. State*, 276 Ga. 736, 738 (585 SE2d 616) (2003). But in *Baugh* we also explained that

> "a witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination." When there are no allegations of recent fabrication, or improper influence or motive on cross-examination, "[t]he prior consistent statement is hearsay evidence improperly admitted to bolster the witness's credibility in the eyes of the jury."

Id. (citations omitted).

As previously stated, Lynn testified near the beginning of trial, before Wright or S. B. took the stand. The defense had not made any claims of recent fabrication, improper influence, or improper motive that the pretrial statements of Wright and S. B. could have served to rebut. Thus, Wright's and S. B.'s pretrial statements to Lynn "were pure hearsay and [were] inadmissible to corroborate the witness or bolster their credibility" in the eyes of the jury. *Baugh*, 276 Ga. at 739. Accordingly, the trial court abused its discretion in admitting Lynn's testimony recounting Wright's and S. B.'s pretrial statements.

Our focus again shifts to whether the trial court's evidentiary errors were harmful. See *Baugh*, 276 Ga. at 739. In making this determination, we cannot look to the improperly bolstered testimony to show that the bolstering error was harmless. See *Cowart*, 294 Ga. at 341-342. However, as noted above, the State presented strong independent evidence of Davis' guilt, at least as a party to the

murder, and the jury was charged on parties to a crime. Under those circumstances, the jury did not need to know whether Davis or Wright was the shooter — a fact that S. B.'s and Wright's statements shed the most light on — in order to find Davis guilty of being a party to Wadley's murder. See OCGA § 16-2-20. Moreover, we also note that Wright's prior statements — which incriminated Davis to a greater extent than did S. B.'s statements[4] — likely would have been admissible if the State had elicited them from Lynn in the proper sequence (i.e., *after* Davis attacked Wright on cross-examination on the ground that he had an improper motive to testify that Davis killed Wadley). Finally, the trial court mitigated the potential harm to Davis by ruling (incorrectly) that while Lynn could testify to Wright's and S. B.'s prior statements, those statements were not admissible to prove the truth of the matter asserted

---

[4] As stated above, Lynn testified that Wright told her that on the night of the murder, Davis had a revolver; that Davis admitted to killing Wadley; that he (Wright) then wrapped Wadley in a bedsheet and threw him in the trunk of his (Wadley's) car; that he and Davis drove Wadley's car to Vidalia, where they left it on the side of the road; and that they both took a taxi back to Soperton.

14

therein. Thus, we conclude that it is highly probable that errors in admitting Lynn's testimony recounting Wright's and S. B.'s pretrial statements did not contribute to the verdict. See *Character v. State*, 285 Ga. 112, 120 (674 SE2d 280) (2009).

3.     Davis argues that the trial court erred in denying his motion for a mistrial. We see no abuse of discretion and affirm the trial court's denial.

At trial, Davis' counsel questioned Lynn on cross-examination about why she believed Wright's claims that Davis was the shooter and that the revolver belonged to Davis, despite Wright's admission that he put a man who might not have been dead yet into a trunk and abandoned the car on the side of the road. Trial counsel also asked why Lynn did not investigate whether S. B. had a motive to lie when S. B. told Lynn that Davis confessed. Davis' trial counsel then asked, "so you're saying that these thirty people you talked to, none of whom were at the scene, somehow corroborated more with [Wright] . . . than with [Davis]?" Lynn replied, "Yes." Davis' trial counsel followed up by asking, "[T]hese thirty witnesses that you

talked to that somehow led you to this conclusion, they're not all here, are they?" Lynn responded that she did not know who was subpoenaed but that she had not seen them all at the courthouse. Davis' counsel then asked Lynn a series of questions about whether "these witnesses" were going to testify about fingerprints, come forward with physical evidence, or were eyewitnesses, and each time Lynn said no.

On re-direct examination, Lynn testified that her investigation was more consistent with what Wright told her than with what Davis told her had happened. Lynn further testified that Wright's demeanor in talking to her and his hesitance to implicate Davis were some of the reasons why she believed Wright and not Davis. On re-cross-examination, Davis' counsel continued to question Lynn about why she believed Wright's statements to her. In response, Lynn said she believed Wright's account because of what other people had told her during her investigation about Wright and Davis. On further re-direct examination, the State asked Lynn, "Now, as to the evidence specifically that you gathered that narrowed it down to [Davis] being

16

more likely the person that did it, what is that evidence? What statements did you use that made you think that?" Lynn replied, "[Davis'] family and relatives told me that he was the one that would be more likely to do that than anyone else."

Davis' counsel immediately objected on the ground of bad character evidence and, outside the presence of the jury, moved for a mistrial. After hearing arguments from the parties, the trial court sustained the objection and said:

> Okay. This is what I'm going to do: I'm not going to grant the mistrial, but I am going to instruct you to abandon that line of questioning. And I am going to instruct the jury that they're to disregard that question, as well as the response of the witness. And I'm going to poll the jury and make sure that they can disregard that in the consideration of the evidence in the trial of this case. If any of them indicate that they cannot disregard it, then I am going to grant the mistrial. If they can disregard it, then in that circumstance I will allow the trial to continue on. That is the resolution that I am going to do.

> . . .

> I will not grant it. I will instruct you, though, that both parties are to refrain from any further reference to this testimony that we have just heard. You will not be allowed to include it in your argument, in your closing

17

arguments. You will not be allowed to use it in any further examination of any other witnesses. That will be the order of the [c]ourt.

After the jury returned to the courtroom, the trial court instructed the jurors as follows:

> Ladies and gentlemen of the jury, when I asked y'all to step out of the courtroom, just before that, the State had asked [Lynn] a question. [Lynn] was beginning a response to that question and the [d]efense objected. While y'all were out, I had ruled that that objection is sustained. And, therefore, you should neither consider the question that was asked, nor this witness's response to that question that was responded to at that last question and answer, right before y'all went out of the courtroom, okay?
> Because I have sustained that objection, it is most important that you not consider the question, nor the answer, in your deliberations during the trial of this case.
> Now, is there any of the jurors who cannot set aside and totally disregard that question and the response to that question as part of your deliberations? If you cannot set that aside and completely disregard it in your — in your deliberations, I want you to please stand up right now. Any of you?
> Okay. None have stood. That being the case, the trial will proceed.

We review the trial court's denial of a motion for a mistrial for an abuse of discretion. See *Elkins v. State*, 306 Ga. 351, 360 (830 SE2d 217) (2019). We will not disturb a trial court's ruling on a

motion for a mistrial unless it is essential to the preservation of the right to a fair trial. See *Brinson v. State*, 289 Ga. 551, 552 (713 SE2d 862) (2011).

Here, the trial court ensured that Davis retained his right to a fair trial by giving an emphatic curative instruction and polling the jurors as to whether they were able to disregard Agent Lynn's improper testimony. None of the jurors indicated that they were unable to disregard the State's question and Lynn's answer. Accordingly, the trial court did not abuse its discretion in this respect. See *Childs v. State*, 287 Ga. 488, 492-493 (696 SE2d 670) (2010) (no abuse of discretion in denial of mistrial where trial court instructed jury to disregard improper witness testimony). See also *Favors v. State*, 305 Ga. 366, 370 (825 SE2d 164) (2019) ("Qualified jurors under oath are presumed to follow the instructions of the trial court." (citation and punctuation omitted)).

4.    Finally, Davis argues that, to the extent this Court concludes that he waived certain objections to Lynn's testimony by failing to raise them at trial, he received ineffective assistance of

counsel. But we have not relied upon waiver as a basis for rejecting any of Davis' enumerations of error challenging the admission of evidence. Thus, this final enumeration of error presents nothing for our review. Accordingly, we affirm Davis' conviction for malice murder.

*Judgment affirmed. All the Justices concur, except Ellington, J., not participating.*

DECIDED JANUARY 27, 2020.
Murder. Treutlen Superior Court. Before Judge Gillis.
*Betsey L. Tate*, for appellant.
*L. Craig Fraser, District Attorney, Robert B. Faircloth, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General*, for appellee.