309 Ga. 95
FINAL COPY

S20A0125.  SCOTT v. THE STATE.

BLACKWELL, Justice.

Torrey Sicarr Nigel Scott was tried by a Chatham County jury and convicted of murder, four rapes, and various other offenses in connection with a violent crime spree in the Savannah area in late 2013 and early 2014. Scott appeals, claiming that the evidence is legally insufficient to sustain several of his convictions, that the trial court erroneously admitted hearsay evidence, and that he was denied the effective assistance of counsel. We agree that the evidence is legally insufficient to sustain one of his rape convictions, and we reverse that conviction. We otherwise see no merit in his claims of error and affirm.[1]

---

[1] In August 2014, a Chatham County grand jury indicted Scott on 28 counts, including murder with malice aforethought, three counts of murder in the commission of various predicate felonies, four counts of rape, two counts of aggravated sodomy, two counts of aggravated sexual battery, two counts of kidnapping, one count of false imprisonment, three counts of armed robbery, one count of robbery by force, one count of burglary, four counts of aggravated

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows as follows.

*Savannah State University Incident*

Early on the morning of December 5, 2013, Scott accosted P. B. as she was returning to her apartment near the campus of Savannah State University. After asking her for money outside the apartment, Scott threatened her with a gun and forced her inside. P. B.'s roommate — S. M. — was in the apartment, and Scott demanded money from both women. Scott then used his fingers to penetrate P. B., forced P. B. to perform oral sex on S. M., forced P. B. to perform

---

assault, and four counts of theft by taking. Scott was tried in February 2016, and the jury found him guilty of all counts. The trial court sentenced Scott to four consecutive terms of imprisonment for life without the possibility of parole (for malice murder and three rapes), eight concurrent terms of imprisonment for life without the possibility of parole (for the fourth rape, two counts of aggravated sexual battery, two counts of aggravated sodomy, and three armed robberies), three concurrent terms of imprisonment for 20 years (for burglary and two kidnappings), and five concurrent terms of imprisonment for 10 years (for false imprisonment and four thefts). The felony murder counts were vacated by operation of law, and the remaining counts merged with counts for which Scott was sentenced. Scott filed a motion for new trial in February 2016, which he subsequently amended twice through new counsel. After a hearing, the trial court denied his motion for new trial in July 2019. Scott timely filed a notice of appeal, and his appeal was docketed to the December 2019 term of this Court and submitted for a decision on the briefs.

oral sex on him, and forcibly had vaginal intercourse with both P. B. and S. M. Scott ejaculated in P. B. and instructed her to take a shower and "push out his sperm." As P. B. showered, Scott told S. M. to collect various valuables from the apartment, and he left the apartment with those items, threatening further harm to P. B. and S. M. if they told anyone what had happened. P. B. and S. M. contacted law enforcement and were taken to a hospital, where medical personnel collected vaginal swabs from both women. Male DNA was extracted from the swab collected from P. B., and that DNA later was matched to Scott.

*Port Wentworth Incident*

On the evening of January 17, 2014, Lisa Pynn put her son to bed in their Port Wentworth home. Later that night, her son heard her taking a bath. She sent a text message at 11:21 p.m., but she failed to respond to a text sent to her at 12:30 a.m. The next morning, she was found dead in an upstairs bedroom of her home. Her body was lying on a bed, and she was fully clothed, although she was not wearing the same clothes as those she had worn when she put her

son to bed. Her neck was bruised, and she had petechiae in both eyes, symptoms that are consistent with strangulation. A forensic examination of her body confirmed that strangulation was the cause of her death, and the forensic examiner found DNA on her neck that was later matched to Scott. Law enforcement officers searched her home, and they discovered that cash and four firearms were missing. One of those firearms later was recovered from a man who said that he had gotten it from Scott. Officers also found a cigarette butt in a trash can in Pynn's home, and DNA extracted from the cigarette butt was matched to Scott.

In January 2014, Scott was staying with his girlfriend, who lived in the same neighborhood as Pynn. Cellular telephone location records confirmed that Scott was in the neighborhood on the evening of January 17. According to the son of his girlfriend, Scott left her house on that evening between 11:20 and 11:45, and he was gone for about 45 minutes. After returning briefly to his girlfriend's house, Scott left quickly and was not seen again in the area for several weeks.

*Candler Hospital Incident*

On the morning of February 9, 2014, K. A. went to work at Candler Hospital. When she arrived, Scott approached her with a gun. He took her cash, forced her to return to her vehicle, and took her to a secluded area nearby, where he forcibly had vaginal intercourse with her. He then forced her to drive them to another location, where he threatened her and left. K. A. subsequently identified Scott in a photographic lineup, and she also identified him as her assailant at trial. Moreover, Scott was identified by two witnesses as the man depicted on security camera footage at a McDonald's restaurant near Candler Hospital on the morning of February 9.

2. Scott does not dispute that the evidence is sufficient to sustain his convictions with respect to the Savannah State and Candler Hospital incidents. Consistent with our customary practice in murder cases, we nevertheless have undertaken an independent review of that evidence to assess its sufficiency. We conclude that the evidence was sufficient to authorize a rational jury to find

beyond a reasonable doubt that Scott is guilty of the crimes of which he was convicted in connection with the Savannah State and Candler Hospital incidents. See <u>Jackson v. Virginia</u>, 443 U. S. 307, 318-319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Scott does argue, however, that the evidence is legally insufficient to sustain his convictions with respect to the Port Wentworth incident. But viewed in the light most favorable to the verdict, the evidence shows that Scott was in the neighborhood in which Pynn lived on the night that she was killed; he left the nearby home of his girlfriend shortly before midnight and was gone for about 45 minutes; the medical examiner estimated that Pynn was killed around midnight; cash and four firearms were missing from Pynn's home, and one of the firearms was recovered from a man who had received it from Scott; and DNA inside Pynn's home and on her body was matched to Scott. The evidence was sufficient to authorize a rational jury to find beyond a reasonable doubt that Scott was

guilty of the murder of Pynn and the theft of cash and firearms.[2] See *Jackson*, supra.

We agree with Scott, however, that the evidence is not legally sufficient to sustain his conviction for the rape of Pynn. There was no physical evidence that Pynn was raped at all. To support the rape conviction, the State points only to evidence that Pynn took a bath on the night that she was killed and that her body was found in clothes other than those she wore when she put her son to bed, the testimony of a medical examiner who said that there often is a "connection" between strangulation and sexual assault,[3] and the evidence that Scott raped other women. Although that evidence may *suggest a possibility* that Pynn was raped, it is not enough to *prove*

---

[2] We note that Scott was convicted of malice murder, and the felony murder counts were vacated by operation of law. To the extent that Scott claims error with respect to the felony murder counts, his claims of error are moot. See Collett v. State, 305 Ga. 853, 855 (1) n.2  (828 SE2d 362) (2019).

[3] Although the medical examiner testified that, generally speaking, there often is a connection between strangulation and sexual assault, he also stated that there was no physical evidence that Pynn had been raped.

*beyond a reasonable doubt* that she was raped. See *Jackson*, supra.

For that reason, we reverse the conviction for the rape of Pynn.[4]

3. At trial, the prosecution offered evidence under OCGA § 24-4-404 (b) that Scott had robbed another woman in Screven County, and the trial court admitted that evidence, which consisted of a certified copy of a conviction for the robbery and the prior testimony of the Screven County victim. With respect to the prior testimony of the victim, the trial court determined that she was "unavailable" under OCGA § 24-8-804 (a) (4) — which provides that a witness is unavailable if she "[i]s unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity" — and that her testimony was admissible, therefore, under the exception to the hearsay rule provided by OCGA § 24-8-

---

[4] Because we reverse the conviction for the rape of Pynn on the ground that the evidence is legally insufficient to sustain it, we need not consider Scott's claim that the trial court erred when it admitted the testimony of the medical examiner about a "connection" between strangulation and sexual assault. That evidence was argued only as proof of Pynn's rape, as the other rapes (and crimes) did not involve strangulation.

804 (b) (1).[5] In making its determination of unavailability, the trial court relied in part on a letter from a physician treating the Screven County victim, who wrote that her medical condition left her unable to travel to Chatham County. On appeal, Scott contends that a physician's letter is an inadequate evidentiary basis for a determination of unavailability under OCGA § 24-8-804 (a) (4), and consequently, the admission of the prior testimony under OCGA § 24-8-804 (b) (1) was an abuse of discretion.[6] We disagree.

Other than the rules of privilege, the usual rules of evidence do not apply to the resolution of "[p]reliminary questions concerning . . . the admissibility of evidence[.]" OCGA § 24-1-104 (a). See also OCGA § 24-1-2 (c) (1) ("The rules of evidence, except those with respect to privileges, shall not apply [to] . . . [t]he determination of questions of fact preliminary to admissibility of evidence when the

---

[5] OCGA § 24-8-804 (b) (1) permits the admission of the prior testimony of an unavailable witness "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

[6] We note that Scott does not claim that the substance of the evidence about the Screven County robbery was inadmissible under OCGA § 24-4-404 (b).

issue is to be determined by the court under [OCGA §] 24-1-104[.]").

Whether the Screven County victim was unavailable presented a question of fact to be determined by the trial court as preliminary to the admissibility of her prior testimony under OCGA § 24-8-804 (b) (1), and there was no error in its consideration of the physician's letter in resolving that question. See United States v. Byrom, 910 F2d 725, 734-735 (III) (11th Cir. 1990) ("In deciding preliminary questions of admissibility [under a hearsay exception] . . . the district court, under Federal Rule of Evidence 104 (a), may consider any evidence, including hearsay, and is bound only by the privilege rules.").[7] Moreover, the trial court did not rely on the letter alone. The prosecuting attorney represented to the trial court that he had verified with the office of the physician that the letter was authentic, and more importantly, Scott's lawyer represented to the trial court

---

[7] The relevant provisions of OCGA §§ 24-1-2 (c) (1) and 24-1-104 (a) are derived from (and closely resemble) Federal Rule of Evidence 104 (a). Decisions of the federal appellate courts — especially the United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit — are especially instructive when we construe and apply such provisions. See Olds v. State, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016).

that he had spoken with the physician and that the physician confirmed the substance of the letter. The letter and the representations of counsel were an adequate basis for the determination by the trial court that the Screven County victim was unavailable under OCGA § 24-8-804 (a) (4), and the trial court did not abuse its discretion when it admitted her prior testimony.

4. Scott contends that he was denied the effective assistance of counsel when his lawyer failed to preserve for appellate review two motions for mistrial.[8] To prevail on his claim of ineffective assistance, Scott must establish that the performance of his lawyer was constitutionally deficient and that he was prejudiced by this deficient performance. See Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Scott must show that his

---

[8] Scott also argues that he was denied the effective assistance of counsel when his lawyer failed to object to certain statements made by the prosecuting attorney in closing argument. The statements in question, however, were not objectionable, and the failure to make objections without merit is not constitutionally ineffective. See Anthony v. State, 303 Ga. 399, 410 (8) n.17 (811 SE2d 399) (2018).

lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Scott must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and Scott has failed to carry it.

In his opening statement, Scott's lawyer said that the evidence would show that the sexual acts involving P. B. and S. M. were consensual. Later that day, during a break, P. B. confronted Scott's lawyer near the courthouse elevators and loudly said, "I hope he rapes you . . . like he raped me." Several members of the jury were in the vicinity of this confrontation, and when the trial resumed, Scott's lawyer made a motion for mistrial. In response to the motion,

the trial court inquired of each juror (outside the presence of the other jurors) about the confrontation, dismissed one juror (who said that she observed the confrontation and was left with the impression that any sexual acts involving Scott and P. B. were not consensual), and instructed the remaining jurors that "you are not to be swayed or influenced by . . . any emotional outbursts . . . and you are not to base your verdict on sympathy, but rather, your verdict must be based on the testimony, the documentary evidence, and the law." The trial court denied the motion for mistrial. Scott's lawyer did not thereafter object to the curative instruction as inadequate or renew the motion for mistrial.

The next day, as P. B. was testifying during direct examination, P. B. yelled, "f**k you" at Scott's lawyer. The trial court immediately called a recess and sent the jury out of the courtroom. Scott's lawyer then made another motion for mistrial. The trial court denied the motion, but it again instructed the jury that "you are not to be swayed or influenced by any emotional outbursts, nor are you to base your verdict on sympathy, but rather,

your verdict must be based on the testimony, the documentary evidence, and the law." Scott's lawyer again did not object to the curative instruction or renew the motion for mistrial.

Putting aside whether Scott's lawyer should have done something more to preserve the question of a mistrial for appellate review, we conclude that Scott has failed to show that he was prejudiced by any such shortcoming. "The appropriate response to a witness'[s] show of emotion is a matter addressed to the trial court's discretion," Favors v. State, 305 Ga. 366, 370 (3) (825 SE2d 164) (2019) (citation and punctuation omitted), and a mistrial is required only when it is "essential to preserve the defendant's right to a fair trial." McKibbins v. State, 293 Ga. 843, 848 (3) (750 SE2d 314) (2013) (citation and punctuation omitted). With respect to the confrontation near the courthouse elevators, the trial court examined each juror and dismissed the one juror who appeared to have been influenced by it. The other jurors either did not observe the confrontation or said that it would not affect their ability to be impartial, and the trial court then gave a curative instruction to

remind the jurors of their obligation not to be influenced by emotional outbursts. With respect to the outburst in the courtroom, the trial court itself observed the outburst (and would have been able to observe the reactions of the jurors to it) and gave another curative instruction. In these circumstances, we cannot say that a mistrial was necessary to preserve Scott's right to trial by a fair and impartial jury. See Wilkins v. State, 308 Ga. 131, 137 (3) (a) (839 SE2d 525) (2020) (noting that a trial court does not abuse its discretion when it issues a curative instruction for a jury to disregard improper comments and the jury indicates it will follow the instruction); Davis v. State, 307 Ga. 746, 754 (3) (838 SE2d 263) (2020) (same). As such, Scott was not prejudiced by the failure of his lawyer to do something more to preserve the question of a mistrial for appellate review.

The evidence is legally insufficient to sustain the conviction for the rape of Pynn, and we reverse that conviction. We otherwise affirm.

Judgment affirmed in part and reversed in part. All the Justices concur.

DECIDED JUNE 16, 2020.
Murder. Chatham Superior Court. Before Judge Freesemann.
*Robert L. Persse*, for appellant.
*Meg E. Heap, District Attorney, Noah J. Abrams, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.