NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 20, 2022

S22A0857. TABOR v. THE STATE.
S22A0986. SPEAR v. THE STATE.

LaGrua, Justice.

Appellants Tyree Tabor and Donny Spear were tried together and convicted of malice murder and other offenses in connection with the shooting death of Nicholas Miller.[1] Although the two co-

---

[1] Miller was shot on October 31, 2016, and he died following complications from his injuries on December 1, 2016. On June 16, 2017, a Fulton County grand jury indicted Vincent Evans, Jeremecia Holley, Spear, and Tabor for the following counts: participation of street gang activity (Count 1—Evans, Spear, and Tabor); malice murder of Miller (Count 2—Evans, Spear, and Tabor); felony murder of Miller, predicated on criminal attempt to commit armed robbery (Count 3—Evans, Spear, and Tabor); felony murder of Miller, predicated on criminal attempt to purchase marijuana (Count 4—Evans, Spear, and Tabor); felony murder of Miller, predicated on aggravated assault (Count 5—Evans, Spear, and Tabor); felony murder of Miller, 2016, predicated on possession of a firearm by a first-offender probationer (Count 6—Spear); criminal attempt to commit armed robbery (Count 7—Evans, Spear, and Tabor); criminal attempt to purchase marijuana (Count 8—Evans, Spear, and Tabor); aggravated assault of Miller (Count 9—Evans, Spear, and Tabor); aggravated battery of Mar'Keil Leonard (Count 10—Evans, Spear, and Tabor); possession of a firearm during the commission of a felony (Count 11—Evans, Spear, and Tabor); possession of a firearm by a first-offender probationer

defendants raise different contentions on appeal, their appeals have been consolidated for purposes of issuing an opinion. Tabor contends that his trial counsel provided constitutionally ineffective assistance. Spear contends that his trial counsel provided constitutionally ineffective assistance and that the trial court abused its discretion by denying his motion for severance. For the reasons explained below, we affirm the convictions in both cases.

---

(Count 12—Spear); possession of cocaine with the intent to distribute (Count 13—Spear); possession of marijuana with the intent to distribute (Count 14—Spear); possession of hydrocodone (Count 15—Spear); possession of a firearm during the commission of a felony (Count 16—Spear); possession of a firearm by a first-offender probationer (Count 17—Spear); possession of cocaine with the intent to distribute (Count 18—Holley); possession of a firearm during the commission of a felony (Count 19—Holley); and possession of marijuana—less than one ounce (Count 20—Holley).

Spear and Tabor were jointly tried from January 27 to February 4, 2020. On February 3, the trial court granted a directed verdict of acquittal on Count 1, and Spear pled guilty to Counts 13 through 17. On February 4, a jury found Spear and Tabor guilty of the remaining counts. As to Spear, the trial court vacated the four counts of felony murder, merged the aggravated assault count into the malice murder count, and sentenced him to serve life in prison with the possibility of parole, plus sixty years to serve consecutively. As to Tabor, the trial court vacated the three counts of felony murder, merged the aggravated assault count with the malice murder count, and sentenced him to serve life in prison with the possibility of parole, plus fifty-five years to serve consecutively.

Spear and Tabor filed timely motions for new trial, which they amended through new counsel. After holding evidentiary hearings on the motions for new trial, the trial court denied the motions in November and December 2021. Spear and Tabor filed timely notices of appeal, and their cases were docketed to this Court's August 2022 term and submitted for a decision on the briefs.

The evidence presented at trial shows that on the evening of October 31, 2016, officers responded to a shooting at an apartment complex located at 1425 Joseph E. Boone Boulevard. Upon their arrival, officers discovered Miller unresponsive, lying face down on the sidewalk suffering from multiple gunshot wounds. He was transported to the hospital, but he never regained consciousness and died a month later on December 1. The medical examiner determined that Miller's cause of death was complications from a gunshot wound to the torso. From the parking lot of the apartment complex, the police recovered a Smith and Wesson 9mm handgun, one 9mm shell casing, eight 7.62mm shell casings, six 5.7mm shell casings, and six .223-caliber shell casings.

Around the same time, Mar'Keil Leonard called Fulton County 911 and told the operator that he had been shot. During his call to 911, someone in the background asked, "Who shot you?" and Leonard responded, "Tyriq."[2] When the police arrived at Leonard's location, they impounded his car—which had multiple bullet holes—

---

[2] Leonard later identified Tabor as "Tyriq."

and recovered his .223-caliber gun, along with 29 .223-caliber cartridges; Leonard was transported to the hospital.

At trial, Leonard testified that on the evening of October 31, he spoke to Tabor regarding a potential marijuana sale. Tabor was going to connect a marijuana buyer to Leonard, Leonard would sell the buyer a pound of marijuana for an agreed-upon price, and Tabor would receive a portion of Leonard's profit, "like a referral fee." Leonard and Tabor agreed to meet at the apartment complex on Joseph E. Boone Boulevard, and Leonard sent a text message to his cousin to let him know where he was going.[3] During Leonard's drive to the apartment complex, he saw Miller, who decided to accompany him.

When Leonard and Miller arrived at the apartment complex, they got out of Leonard's car, Tabor and Spear got out of Tabor's car, and the four men greeted each other.[4] Miller smoked a cigarette near

---

[3] The text message stated, "Aye im finna go serve [T]yriq dem on da hill apartment behind chapel…just to keep u updated." Leonard testified that "serve" meant to sell drugs.

[4] Leonard testified that he had known Tabor for approximately five years

4

the front of Leonard's car, and Tabor sat on the back of Leonard's car. Leonard stood next to his open driver-side door with his hands on top of the door; the car's engine continued running.

Leonard and Spear smoked a "blunt" and chatted about the marijuana. Spear asked Leonard about the marijuana's price, which confused Leonard because the price was previously agreed-upon. Leonard then presented a different type of marijuana to Spear, and they smoked another "blunt." Spear kept "moving" during the conversation, and Leonard asked Tabor, "What's up with your boy?" Leonard later told Detective Jamael Logan of the Atlanta Police Department that Tabor and Spear had handguns in their waistbands and Spear "kept fudging and playing with [his] handgun[.]"[5]

Leonard testified that he then sat in his driver's seat, opened the passenger door from the inside, and told Miller, "Hey, come on,

_____

and knew of Spear because Leonard had previously purchased marijuana from Spear.

[5] Detective Logan interviewed Leonard at the hospital, and the interview was audio-recorded and portions of the interview were played at trial.

let's go, because they playing." Leonard testified that he did this because Spear "kept asking questions," so he thought Spear did not want to purchase the marijuana. Leonard later told an investigator that Leonard told him that Spear "appeared [to be] looking around as if he knew something was about to take place, that he was stalling."

Leonard testified that after he asked Miller to get into his car, Miller began walking toward the car, but then "turned around and just took off [running]." Then, an unknown man, whom Leonard later identified as Evans, walked out from behind Leonard's car, stood next to Spear, pointed what "looked like a shotgun" at Leonard, and stated, "If you move, I'm going to shoot you." Leonard "slapped [his] car in drive [and] took off," and he saw that shots were being fired at him when he looked in his rearview mirror. Leonard testified that he drove a short distance to his grandmother's house, realized that he had been shot multiple times, and called 911. Although Leonard initially told Detective Logan that Evans, Tabor, and Spear all shot at him while he was driving away, at trial,

Leonard denied that Tabor shot at him.

When Leonard spoke with Detective Logan at the hospital, he identified Tabor and Spear by their nicknames only, and he could not identify Evans by any name. However, he provided a physical description of all three men. Leonard later provided Detective Logan with social-media photographs of the three men he believed were involved with the shooting. Law enforcement officers eventually determined that the three men were Tabor, Spear, and Evans and developed photographic lineups of the men containing photographs different from the ones Leonard provided. From these photographic lineups, Leonard identified Tabor, Spear, and Evans as the men who shot at him, and police issued arrest warrants for them.

On December 14, law enforcement officers were surveilling Spear and watched him and co-defendant Jermecia Holley leave their apartment; Spear was carrying a black backpack. After they drove away, the police conducted a traffic stop, and Spear was arrested on an outstanding arrest warrant. The police recovered Spear's backpack, which contained a stolen handgun, marijuana,

7

hydrocodone, and cocaine.

Detective Logan interviewed Spear, who identified Leonard as the man he met the night of Miller's shooting; Spear also identified himself in one of the photographs that Leonard had previously provided to Detective Logan. While Spear was in jail, he called Holley and admitted he had been with Tabor at the apartment complex, but stated he was not involved in the shooting. Spear also admitted to possession of the backpack and its contents, and he told Holley that there were other guns, including "a glock and a gold gun," and drugs at the apartment that needed to be moved. Based on this information, law enforcement obtained a search warrant and recovered drugs and three handguns from the apartment, but the two guns referenced in Spear's phone call to Holley were not recovered.

One month later, on January 16, 2017, around 2:30 a.m., the police were dispatched to a Bank of America in Sandy Springs in reference to ATM tampering. Upon their arrival, the police pursued several suspects into an adjacent construction site and arrested

8

three people, one of whom was Tabor.

Several hours later, around 6:30 a.m., the superintendent of the construction site found a Ruger 9mm handgun near a pile of construction debris and turned the weapon over to police. Ballistics testing revealed that the 9mm shell casing found at the apartment complex on October 31, 2016, was fired from the Ruger 9mm handgun recovered from the construction site—and not the Smith and Wesson 9mm handgun found at the scene. Further ballistics testing revealed that the eight 7.62mm shell casings were fired from one gun, the six 5.7mm shell casings were fired from another gun, the six .223-caliber shell casings were fired from yet another gun, and that none of the shell casings were fired from Leonard's gun.

*Case No. S22A0857. Tabor v. The State:*

1. Tabor contends that his trial counsel provided constitutionally ineffective assistance in multiple ways. To prevail on these claims, Tabor must demonstrate both that his trial counsel's performance was professionally deficient and that he was prejudiced by this deficient performance. See *Bates v. State*, 313 Ga.

9

57, 62 (2) (867 SE2d 140) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To establish deficient performance, Tabor must show that trial counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. Establishing deficient performance

> is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably, and [Tabor] bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

*Vann v. State*, 311 Ga. 301, 303 (2) (857 SE2d 677) (2021) (citations and punctuation omitted). And, "in the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim." *Holland v. State*, 314 Ga. 181, 190 (3) (875 SE2d 800) (2022) (citation and punctuation omitted).

10

To establish prejudice, Tabor must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been different. See *Bates*, 313 Ga. at 62 (2). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation and punctuation omitted). "And, this burden is a heavy one." Id. at 62-63 (2) (citation and punctuation omitted). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." Id. at 63 (2) (citation and punctuation omitted). "This Court accepts a trial court's factual findings and credibility determinations on an ineffectiveness claim unless they are clearly erroneous, but we apply legal principles to the facts de novo." *Powell v. State*, 309 Ga. 523, 526-27 (2) (847 SE2d 338) (2020).

Tabor contends that his trial counsel provided constitutionally ineffective assistance by failing to (i) adequately consult with Tabor, (ii) subpoena witnesses, (iii) interview law enforcement witnesses, and (iv) interview the medical examiner or any member of his staff.

11

Tabor's trial counsel did not testify at the motion-for-new trial hearing. But, Tabor testified that during trial counsel's nearly five-month representation of him, trial counsel met with Tabor four to five times. Tabor admitted that during these meetings, his trial counsel read the indictment, explained the charges and the potential maximum sentence, gave him discovery, including the medical examiner's report and the forensic report, asked him "how [he] wanted to go about" defending his case, and explained "what [the State] offered, . . . what he was going to do [to defend Tabor's case], [and] how he was going at the prosecution." But, Tabor testified that his trial counsel failed to subpoena or interview any witnesses, including Ciera Dobbs and Rosalyn Well, and that these women had possession of his preliminary hearing transcript, which would have been helpful in impeaching one of the detectives.

Regarding the alleged failure to adequately consult with Tabor, "[a]s we have explained, there exists no magic amount of time which counsel must spend in actual conference with his client," and Tabor "does not specifically describe how additional communications with

his lawyer would have enhanced his defense." *Styles v. State*, 309 Ga. 463, 472 (5) (a) (847 SE2d 325) (2020) (citation and punctuation omitted). Further, Appellant has failed to make a proffer showing what evidence or strategy would have been uncovered through additional consultation. See id. We also conclude that Spear's trial counsel did not perform his duties in an objectively unreasonable way because he met with Spear four to five times, explained the indictment and the potential maximum sentence, provided and discussed discovery, and explained how he planned to defend Spear. Accordingly, we conclude Appellant has failed to carry his burden of showing that his trial counsel was deficient in this respect, and this claim fails.

Regarding the failure to interview and subpoena witnesses, Tabor failed to identify or proffer which witnesses from law enforcement or the medical examiner's office should have been interviewed, and how any interviews would have enhanced his defense. Although Tabor specifically identified Dobbs and Well as potential witnesses, it appears from Tabor's testimony that the only

13

relevant information they possessed was a copy of Tabor's preliminary hearing transcript.[6] According to Tabor, possession of this transcript would have helped his trial counsel impeach Detective Logan because there were alleged "inconsistencies" in his testimony at the preliminary hearing and at trial. But, Tabor failed to identify any prior inconsistent statements made by the detective and does not contend that his trial counsel was deficient in failing to impeach the detective. Thus, Tabor has failed to demonstrate that his counsel performed deficiently in failing to interview and subpoena witnesses, and these ineffectiveness claims fail.[7] See *Lanier v. State*, 310 Ga. 520, 526 (3) (b) (852 SE2d 509) (2020) (The

---

[6] We note that this transcript was filed with the trial court approximately two years prior to trial, and therefore it was not necessary for Tabor's trial counsel to contact Dobbs and Well to obtain a copy of the transcript.

[7] Tabor also enumerates as error that his trial counsel provided constitutionally ineffective assistance by failing to (i) impeach Leonard with unrelated pending charges, (ii) cross-examine Leonard with the fact that he was not prosecuted for crimes related to Miller's death, (iii) move for a mistrial when the trial judge failed to sua sponte recuse, (iv) move for recusal of the trial judge, and (v) join the State's motion for mistrial and motion for recusal. However, Tabor's enumerations are "not supported by argument or citation of authority" and so are abandoned. See Supreme Court Rule 22. See also *Payne v. State*, 314 Ga. 322, 329 n.7 (877 SE2d 202) (2022) ("It is not the function of this Court to cull the record for a party . . . to form arguments on the appellant's behalf." (citation and punctuation omitted)).

14

appellant failed to show that his trial counsel was deficient where he "failed to point to evidence tending to show what further investigation would have revealed or to offer any additional witnesses to demonstrate that their testimony would have been relevant and favorable." (citation and punctuation omitted)).

*Case No. S22A0986.  Spear v. The State:*

2.  Spear contends that his trial counsel provided constitutionally ineffective assistance by failing to file a timely motion to bifurcate certain counts.[8] We disagree.

(a) On the first day of trial, Spear's trial counsel orally moved to bifurcate the felony murder count predicated on possession of a firearm by a first-offender probationer (Count 6), the predicate possession of a firearm by a first-offender probationer count (Count 12), and a separate possession of a firearm by a first-offender probationer count (Count 17) on the ground that the evidence

---

[8] We note that the law governing Spear's ineffectiveness claims in Divisions 2, 3, and 4 is set out in Division 1.

15

supporting these counts "place[d] his character in evidence."[9] The trial court orally denied the motion on the merits and later issued a written order denying the motion because it was both untimely and meritless.

It has long been established that a trial court "[does] not err in refusing to bifurcate the charge of possession of a firearm by a first[-]offender probationer" where, as here, "[t]he possession charge was an underlying felony to a murder count of the indictment." *George v. State*, 276 Ga. 564, 565 (3) (580 SE2d 238) (2003). See also *Cooks v. State*, 299 Ga. 787, 789-790 (3) (792 SE2d 389) (2016) ("[Where] . . . the count charging possession of a firearm by a convicted felon might serve as the underlying felony supporting a felony murder conviction, a motion to bifurcate should be denied." (citation and punctuation omitted)). Because the trial court was not required to bifurcate Count 12, Spear has failed to show that his trial counsel was deficient for failing to timely file such a motion.

---

[9] Counts 6 and 12 arose from Miller's death, and Count 17 arose from the handgun in Spear's possession during his arrest.

16

See *Talley v. State*, 314 Ga. 153, 165 (3) (d) (875 SE2d 789) (2022) (no deficient performance in failing to seek bifurcation of a firearm charge when it was a predicate to a felony murder charge).

And, to the extent Spear contends that the trial court should have also bifurcated the felony murder count from the rest of his trial, this claim also fails. See *Brown v. State*, 295 Ga. 804, 807-808 (3) (764 SE2d 376) (2014) ("Because in this case one of the counts of felony murder was based on the felon-in-possession firearm charge (and the indictment also charged malice murder), the trial court did not err when it denied [the appellant's] motion to bifurcate" the felon-in-possession firearm charge and the related felony murder count from his trial.).Regarding Count 17, evidence of Spear's status as a first-offender probationer, as well as the charges for which he was on probation, was properly admitted through the State's presentation of evidence on Counts 6 and 12. Accordingly, Spear has failed to show that his trial counsel performed deficiently, and this claim fails. See *Koonce v. State*, 305 Ga. 671, 676 (2) (d) (827 SE2d 633) (2019) (concluding that trial counsel was not deficient in failing

17

to object to cumulative evidence).[10]

(b) On the second day of trial, Spear's trial counsel orally moved to bifurcate Counts 13 through 17, the drug-and-gun charges that arose from Spear's arrest, on the basis that the evidence supporting these charges was irrelevant and unduly prejudicial. The trial court took the motion under advisement and later issued a written order denying the motion because it was both untimely and meritless. To the extent that Spear contends that his trial counsel provided constitutionally ineffective assistance by failing to timely file this motion, we conclude that any such ineffectiveness claim has been waived.

"Claims of trial counsel ineffectiveness must be raised at the earliest practicable opportunity." *Bedford v. State*, 311 Ga. 329, 338 (5) (c) (857 SE2d 708) (2021) (citation and punctuation omitted).

---

[10] Cf. *Cooks v. State*, 299 Ga. 787, 789 (3) (792 SE2d 389) (2016) ("[I]n cases where a felon-in-possession firearm charge is unrelated to another count for which the defendant is to be tried, the proceedings should be bifurcated so that the jury will hear and decide the more serious charges before learning about the firearm charge and the defendant's prior conviction." (citation and punctuation omitted)).

"That moment is before appeal if the opportunity to do so is available. The pre-appeal opportunity is available when the convicted defendant is no longer represented by the attorney who represented him at trial." *Elkins v. State*, 306 Ga. 351, 361 (4) (a) (830 SE2d 217) (2019) (citation and punctuation omitted).

Here, the amended motion for new trial filed by motion-for-new-trial counsel failed to include an ineffectiveness claim concerning the motion orally moved for on the second day of trial seeking to bifurcate Counts 13 through 17 on the ground that the evidence related to the drug-and-gun charges was irrelevant and prejudicial,[11] and the order denying the motion for new trial referenced only trial counsel's failure to timely file the motion orally moved for on the first day of trial seeking to bifurcate counts 6, 12, and 17 on the ground that the evidence "place[d] his character in evidence."[12] Because Spear "failed to raise this claim at the earliest

---

[11] The amended motion for new trial referenced only the motion filed on the first day of trial seeking to bifurcate Counts 6, 12, and 17.

[12] The trial court's order actually referenced, "counts 16, 12 and 17," but we conclude that the trial court's inclusion of Count 16, as opposed to Count 6,

practicable moment, he did not preserve it for appellate review," and this claim has been waived. *Elkins*, 306 Ga. at 361 (4) (a) (citation and punctuation omitted).

3. Spear contends his trial counsel provided constitutionally ineffective assistance by withdrawing certain previously-filed motions. We disagree.

In February 2018, Spear's pre-trial counsel filed several motions, including a motion for immunity based on self-defense, a motion to suppress physical evidence, a motion to suppress identification, and a motion to suppress statements. In November 2018, the trial court held a hearing on the motions, and trial counsel withdrew the motion for immunity, the motion to suppress physical evidence, the motion to suppress identification, and the motion to suppress statements.

(a) *The withdrawn motion for immunity*. At the motion-for-new-trial hearing, trial counsel was not questioned about why he

was likely a scrivener's error.

20

withdrew the motion for immunity. "[I]n the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim." *Holland*, 314 Ga. at 190 (3) (citation and punctuation omitted). "It may be reasonable for trial counsel to forgo a pre-trial immunity motion so as to avoid subjecting his client to pre-trial cross-examination, or for counsel to elect to demonstrate self-defense to the jury, rather than to the judge." *Broxton v. State*, 306 Ga. 127, 138 (5) (a) (829 SE2d 333) (2019). Here, Spear told both Detective Logan and Holley that while he was at the apartment complex with Tabor, he was not involved in the shooting, and Spear did not contend at trial, at the motion-for-new trial hearing, or in his brief to this Court that he acted in self-defense. Because Spear has not established that no competent attorney would have withdrawn the motion for immunity under the circumstances of this case, he has not shown that his counsel's performance was professionally deficient. Accordingly, this claim fails. See id.

(b) *The withdrawn motions to suppress physical evidence,*

21

*identification, and statements.* "Where, as here, an appellant claims that trial counsel was deficient for failing to file a motion to suppress, the [appellant] must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Evans v. State*, 308 Ga. 582, 586 (3) (842 SE2d 837) (2020) (citation and punctuation omitted). Spear makes no such showing. Rather, he contends only that trial counsel's withdrawal of the motions deprived him of the ability to challenge evidence prior to trial and that trial counsel failed to provide a reasonable explanation about why he withdrew these motions. Appellant makes no argument that any physical evidence, identification, or statement would have been suppressed had trial counsel gone forward with these motions. Accordingly, because Spear failed to show that the evidence, identification, or statements would have been suppressed had trial counsel not withdrawn the motions to suppress, he has not established that his trial counsel was deficient, and this claim fails. See *Roseboro v. State*, 308 Ga. 428, 435 (2) (a) (841 SE2d 706) (2020) ("[B]ecause [the appellant] has not made a showing that had a

22

motion been filed, the evidence would have been suppressed, we agree with the trial court's conclusion that trial counsel was not deficient.").

4. Spear contends that his trial counsel provided constitutionally ineffective assistance by failing to successfully argue the motion to sever his trial from that of his co-defendants. We agree with the State, however, that this claim has been waived.[13]

Spear's amended motion for new trial did not raise any ineffectiveness claim concerning the motion to sever. And although there was some questioning about the motion to sever at the motion-for-new-trial hearing, the trial court's order did not address any ineffectiveness claim on that issue. The lack of ruling from the trial court indicates that the court did not view this claim as having been raised implicitly, which could have preserved the claim for appellate review. See *Rickman v. State*, 304 Ga. 61, 66 (3) (816 SE2d 4) (2018) ("[A]lthough a trial court may . . . allow a motion for new trial to be

---

[13] We note that the law governing waiver of an ineffectiveness claim is set out in Division 2 (b).

23

amended implicitly by treating a claim as if it had been raised in the motion, the trial court's failure to address any ineffectiveness claim in its ruling on the motion for new trial indicates an absence of any such amendment."). Accordingly, because Spear "failed to raise this claim at the earliest practicable moment, he did not preserve it for appellate review." *Elkins*, 306 Ga. at 361 (4) (a) (citation and punctuation omitted).

5. Spear contends that the trial court abused its discretion by denying his motion to sever his trial from that of Tabor because the trial court "fail[ed] to make any findings in support [of] its order." We disagree.

At the motion-to-sever hearing, Spear's trial counsel sought severance from all three of Spear's co-defendants. However, trial counsel focused primarily on Evans, arguing that Evans's presence at a joint trial would be prejudicial to Spear on *Bruton* grounds.[14] Although trial counsel made no specific argument concerning Tabor,

---

[14] *Bruton v. United States*, 391 U.S. 123 (88 SCt 1620, 20 LE2d 476) (1968).

24

he did mention that Tabor was in "bench warrant status." The trial court inquired about the statements Evans made to law enforcement and whether Tabor or Holley made any statements.[15] The trial court later issued a written order summarily denying the motion based upon "the argument of both parties" and the "applicable law." As noted above, Spear was tried with Tabor only.

"A trial court has the discretion to grant or deny a severance in a joint trial." *Ruff v. State*, 314 Ga. 386, 386 (1) (877 SE2d 239) (2022) (citation and punctuation omitted). "In ruling on a motion to sever, a trial court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses." Id. at 386-387 (1) (citation and punctuation omitted).

On appeal, he contends only that the trial court erred by failing to 1) make any factual findings in its order, and 2) reference any law

---

[15] During this inquiry, the State opposed severance, but acknowledged that Evans made some statements that would not be admissible at a joint trial.

25

in support of its decision. However, a trial court is not required to make explicit findings with respect to the severance factors when "[i]t is obvious from the transcript that the trial court properly considered these factors when denying [the defendant's] motion to sever." *Flournoy v. State*, 294 Ga. 741, 748 n.5 (5) (755 SE2d 777) (2014). When, as here, a trial court makes no explicit findings in ruling on a motion that does not require such findings to be made, we presume that the trial court implicitly made all the findings in support of its ruling that the record would allow. See *Anthony v. State*, 311 Ga. 293, 297 (3) (857 SE2d 682) (2021). Because the trial court was not required to make explicit findings with respect to the severance factors, and it is obvious from the transcript that the trial court properly considered the appropriate factors when it denied Spear's motion to sever, this claim fails.[16]

---

[16] Spear also contends that, under *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020), the combined prejudicial effect of his trial counsel's deficiencies and the trial court's error affected the outcome of the trial. However, "to establish cumulative error, [Spear] must show that at least two errors were committed in the course of the trial." *Holland*, 314 Ga. at 193 (4) (citation and punctuation omitted). Since we have not concluded that Spear's trial counsel performed deficiently, cumulative error analysis under *Lane* is not applicable.

*Judgment affirmed. All the Justices concur.*