NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 9, 2025

S25A1298.  EDWARDS v. THE STATE.

BETHEL, Justice.

A jury found Jalon Dante Edwards and his co-defendants Colton Sims and Monte Glover, Jr., guilty of malice murder and other crimes in connection with the shooting death of DeCoby Barlow.[1] We previously affirmed Sims's and Glover's convictions.

---

[1] The crimes occurred on December 8–9, 2018. On February 21, 2019, a Henry County grand jury jointly indicted Edwards, along with Sims and Glover, for malice murder (Count 1), felony murder predicated on aggravated assault  (Count 2), two counts of aggravated assault based on the shooting of Barlow and shooting in the direction of a security guard (Counts 5 and 6), respectively, and two counts of possession of a firearm during the commission of a felony (Counts 9 and 10). Sims and Glover were each charged with one count of possession of a firearm by a convicted felon (Counts 7 and 8) and felony murder predicated on the felon-in-possession charge (Counts 3 and 4). At a jury trial in January through February of 2020, the defendants were found guilty on all counts.

The trial court sentenced Edwards to serve life in prison on Count 1, twenty years concurrent on Count 6, and five years consecutive on Count 9. The remaining counts were vacated or merged.

Edwards filed a timely motion for new trial on February 10, 2020, which he later amended. Following a hearing, the trial court denied the amended

See *Sims v. State*, 321 Ga. 627 (2025). In this appeal, Edwards challenges the sufficiency of the evidence to support his convictions, argues that the trial court erred in several respects, and asserts that trial counsel rendered constitutionally ineffective assistance. For the reasons that follow, we affirm.

1. As set forth in *Sims*, 321 Ga. at 628–29, and viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following.

> On the evening of December 8, 2018, Sims and his friend Colby Toles got into a dispute with Glover and co-defendant Jalon Edwards at a nightclub. During the ensuing scuffle between Toles and Edwards, Edwards brandished a firearm, and the dispute moved outside. The group and several patrons, including Barlow, likewise exited the building.
>
> A witness, Chris Jackson, testified that he saw Sims, whom he knew, fire several shots in the air near the club at the corner of the building and that he thought Sims was "taking up" for Toles. Jackson then heard shots being fired by another person.

---

motion on May 31, 2024. Subsequently, on Edwards's motion, the trial court vacated the order denying the motion for new trial and re-entered it on November 7, 2024. Edwards then filed a timely notice of appeal, which was docketed to the August 2025 term of this Court and submitted for a decision on the briefs.

Security guards outside the club observed Glover retrieve a firearm from his vehicle and then heard shots ring out from different directions outside the club. [Landon] Brown, one of the security guards, saw several people with firearms, heard shots fired toward him and the other security guards at the front of the club, and heard shots returned between the front of the club and the adjacent building. While fleeing the barrage of shots, Barlow was struck in the crossfire, sustaining a fatal gunshot wound to his back.

During the investigation into the crimes, ballistics evidence confirmed that shots were fired between the two locations. Police ultimately recovered a Glock handgun belonging to Edwards, which was determined to have fired the bullet that killed Barlow. A detective obtained surveillance video showing the crimes, which was played for the jury at trial, and which the detective testified showed Edwards and Glover firing weapons. The jury also heard testimony that one of the security guards, who was present during the crimes and who knew Glover, reviewed the security footage of the incident and observed Glover fire his weapon.

Id. at 628–29.

2. In his first enumeration of error, Edwards contends that there was not sufficient evidence "to convict [him] of the crimes charged." But he asserts specific argument only with respect to the evidence supporting the felony murder count and the underlying aggravated assault that was based on the shooting of Barlow.

3

Reviewing only those claims, see Supreme Court Rule 22 ("Any enumerated error or subpart of an enumerated error not supported by argument, citations to authority and citations to the record shall be deemed abandoned."), we conclude that Edwards's claim fails. The underlying aggravated assault count merged with the malice murder count, and the felony murder count was vacated, see footnote 1, so Edwards was not sentenced on those counts. Edwards's challenge to the sufficiency of the evidence on these counts is therefore moot. See *Milton v. State*, 318 Ga. 737, 742 n.5 (2024) (where charges either merged into defendant's murder conviction or were vacated, challenges to the sufficiency of the evidence to support those merged or vacated crimes were moot).

3. Edwards next complains that the trial court erred when instructing the jury on justification, transferred justification, and excessive force. Because Edwards did not object to these instructions at trial, we review this claim only for plain error. See *Hill v. State*, 310 Ga. 180, 194 (2020); OCGA § 17-8-58(b).

4

> To prevail on plain-error review, an appellant must show that the alleged instructional error was not affirmatively waived; was clear and obvious, rather than subject to reasonable dispute; likely affected the outcome of the trial; and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*Hill v. State*, 321 Ga. 177, 181 (2025) (quotation marks omitted). And "the appellant squarely bears the burden of satisfying the exacting standard required by plain-error review, a task that is difficult, as it should be." Id. (quotation marks omitted).

At trial, Edwards raised a justification defense, arguing that he fired his weapon in self-defense only after shots were fired at him and the security guards outside the club. And because Barlow was not the aggressor but, rather, an unintended victim caught in the crossfire, Edwards relied on the principle of transferred justification to support that defense. See *Howard v. State*, 307 Ga. 12, 22 (2019) (noting that under "the principle of transferred justification," "no guilt attaches if an accused is justified in shooting to repel an assault, but misses and kills an innocent bystander" (quotation marks omitted)), disapproved on other grounds by *Johnson v. State*,

315 Ga. 876, 889 n.11 (2023). To that end, Edwards requested that the trial court charge the jury on justification and transferred justification. When charging the jury on these principles, the trial court also gave the pattern charge on excessive force, instructing the jury that

> [t]he use of excessive or unlawful force while acting in self defense is not justifiable and the defendant's conduct in this case would not be justified[ ] [i]f you find that the force used exceeded that which a defendant reasonably believed was necessary to defend against the victim's use of unlawful force, if any[.]

See Suggested Pattern Jury Instructions (Criminal) § 3.16.20 (2019). Though Edwards raised no objection to this instruction at trial he complains on appeal that the reference to "the victim's use of unlawful force" was misleading to the jury because Barlow, while the victim, was not the aggressor. Instead, Edwards says, the charge should have referred to "the aggressor's use of unlawful force," not "the victim's." Considering the excessive force instruction in the context of the entire jury charge, as we must, see *Gold v. State*, 319 Ga. 149, 151 (2024), we conclude that Edwards has failed to show

6

that the alleged instructional error likely affected the outcome of the trial.

To begin, the trial court's initial charge on the affirmative defense of justification — that "a defendant is justified to kill *another person* in the defense of self or others" (Emphasis added.)— made clear that the jury should acquit Edwards "if it determined he was justified in firing his weapon, regardless of whom the bullet struck." *Allen v. State*, 290 Ga. 743, 746 (2012).  The trial court's subsequent charge on excessive force, which tracked the pattern charge, was correct in substance and sufficiently apprised the jury that it was required to determine whether the force used by Edwards was excessive. See *Robbins v. State*, 320 Ga. 19, 25–26 (2024). And immediately after giving the excessive force charge, the trial court instructed the jury that: "[U]nder the principle of transfer[red] justification, no guilt attaches if a defendant is justified in shooting to repel an assault, but misses and kills an innocent bystander," but that transferred justification is inapplicable where the defendant "shot carelessly, and in a wanton and reckless disregard of the

danger resulting to the bystander." This charge fairly covered the legal principles that Edwards requested regarding transferred justification. See *Howard*, 307 Ga. at 22; *Allen*, 290 Ga. at 746. Thus, considered as a whole, the trial court's charge made clear to the jury that it should acquit Edwards if it determined he was justified in firing his weapon, regardless of whom the bullet struck and regardless of whose unlawful force Edwards was responding to. See *Patel v. State*, 278 Ga. 403, 405 (2004) ("[T]he trial court adequately covered the principle of transferred justification when it charged the jury on the twin principles of transferred intent and justification." (quotation marks omitted)). As such, Edwards has failed to show that the use of "victim" rather than "aggressor" in the excessive force instruction likely affected the outcome of his trial, and this claim fails.

4. Edwards next argues that the trial court erred in denying his motion to sever his trial from his co-defendants. Edwards argues, as he did below, that evidence of his co-defendants' prior felony convictions created a "spillover" effect that unfairly prejudiced the

jury against him. He also argues that his defense strategy diverged from that of his co-defendants and that the trial court failed to conduct the proper analysis in rejecting his motion. We disagree.

We review the trial court's denial of a motion to sever for an abuse of discretion. *Campbell v. State*, 320 Ga. 333, 339 (2024). And as we have explained,

> [a] trial court has broad discretion to grant or deny a motion to sever in a murder case in which the death penalty is not sought. When ruling on such a motion, a court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses. To show that the trial court abused its discretion in denying a motion to sever, a defendant must do more than raise the existence of antagonistic defenses or the possibility that a separate trial would have given him a better chance of acquittal. The defendant must make a clear showing that a joint trial was so prejudicial as to amount to a denial of his right to due process.

*Saylor v. State*, 316 Ga. 225, 230–31 (2023) (citations and quotation marks omitted).

Edwards has failed to make this showing.[2] This case involved

---

[2] Edwards does not go so far as to argue in his appellate brief that the

only three defendants who were tried for largely the same offenses relating to the same incident, with the only variance in charges being that Glover and Sims were charged with possession of a firearm by a convicted felon and felony murder predicated on the felon-in-possession charges. Moreover, the law and the evidence were substantially the same for all three defendants, and the State argued that the defendants were all involved in the singular shooting incident underlying the charges. See *Saylor*, 316 Ga. at 231 (holding that the trial court did not abuse discretion in denying defendant's motion to sever when the case "involved only three defendants who were tried for almost all the same offenses relating to the same incidents," and "[t]he law and evidence were substantially the same for all of them"); *Bolden v. State*, 278 Ga. 459, 462 (2004) ("[T]he evidence with which each appellant takes issue

---

defendants had antagonistic defenses — just "different" ones. Regardless, to prevail on a claim that the trial court erred by denying a motion to sever, a defendant must show more than the mere existence of antagonistic defenses; he must also make a showing of resulting prejudice arising from those antagonistic defenses. See *Chapman v. State*, 322 Ga. 237, 247 (2025). This Edwards has failed to do also.

10

was admissible against both of them inasmuch as each played a separate role in the aggravated assaults and murder, and the evidentiary facts and the law applicable to each were substantially the same.").

In advancing this enumeration, Edwards emphasizes the perceived prejudice to him arising from the admission of his co-defendants' prior felony convictions. It is true that the State introduced into evidence certified copies of Sims's and Glover's prior convictions — Sims for tampering with evidence and Glover for trafficking a controlled substance, trafficking a controlled substance near a school, and tampering with physical evidence. But on their face, these prior convictions were non-violent, the underlying details about the prior convictions were not admitted into evidence, and the jury was instructed about the limited purpose for which it could consider evidence of the prior convictions. Under these circumstances, even if Edwards suffered some prejudice from the admission of his co-defendants' prior convictions, "it did not amount to the denial of due process necessary to constitute an abuse of

11

discretion." *Smith v. State*, 290 Ga. 428, 430 (2012). See also *Guffie v. State*, 304 Ga. 352, 355 (2018) (no abuse of discretion in denial of motion to sever where jury did not hear underlying details of co-defendant's prior convictions).

Finally, Edwards complains in passing that the trial court failed to make findings on the record before denying his motion to sever. But "[a] trial court is not required to make explicit findings with respect to the severance factors when it is obvious from the transcript that the trial court properly considered these factors when denying the defendant's motion to sever." *Tabor v. State*, 315 Ga. 240, 251 (2022) (punctuation omitted). And here, Edwards argued the applicable law and facts in his motion to sever, which the trial court took under advisement before later orally denying the motion. "When, as here, a trial court makes no explicit findings in ruling on a motion that does not require such findings to be made, we presume that the trial court implicitly made all the findings in support of its ruling that the record would allow." Id. Accordingly, this claim fails.

5. In his fourth enumeration of error, Edwards contends that the trial court erred by failing to remove a juror who expressed concerns about her personal safety. But the record reflects that Edwards expressly requested that the juror at issue remain on the jury. As such, Edwards has waived appellate review of this claim. See *Sims*, 321 Ga. at 632; *Draughn v. State*, 311 Ga. 378, 385–86 (2021) (defendant affirmatively waived right to appellate review of issue where he invited the complained-of action).

6. Lastly, Edwards asserts that his trial counsel provided constitutionally ineffective assistance by failing to seek removal of the concerned juror and by failing to object to the excessive force jury instruction discussed in Division 3 above. Edwards's claims fail.

To prevail on a claim of ineffective assistance, an appellant must show both that his trial counsel performed deficiently and that the deficiency prejudiced his defense. *Smith v. State*, 315 Ga. 357, 365 (2022) (citing *Strickland v. Washington*, 466 US 668, 687 (1984)). The deficiency prong requires the appellant to "show that his attorney performed at trial in an objectively unreasonable way

13

considering all the circumstances and in light of prevailing professional norms." *Williams v. State*, 316 Ga. 304, 314–15 (2023) (quotation marks omitted). And because an appellant "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment," this is no easy showing. *Payne v. State*, 313 Ga. 218, 223 (2022). The prejudice prong requires the appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith*, 315 Ga. at 365. Showing that the error had "some conceivable effect on the outcome of the proceeding" is not enough; the appellant instead must "establish a reasonable probability of a different result, which means a probability sufficient to undermine confidence in the outcome." *Neuman v. State*, 311 Ga. 83, 96–97 (2021) (quotation marks omitted). Demonstrating ineffective assistance is a "high bar," and if an appellant fails to make the required showing on either the deficiency or the prejudice prong, we are not required to

consider the other. *Mohamed v. State*, 307 Ga. 89, 93 (2019).

(a) Edwards first argues that trial counsel performed deficiently by failing to seek the removal of the juror who expressed concern for her safety. "[J]uror selection is a matter of trial tactics and strategy," and "a decision implicating trial tactics and strategy can serve as the basis for an ineffectiveness claim only if it is so patently unreasonable that no competent attorney would have made such a decision." *Capps v. State*, 300 Ga. 6, 12–13 (2016). Edwards has not made that showing here.

As an initial matter, at the motion for new trial hearing, Edwards never asked trial counsel why he did not seek the juror's removal. Of course, "when trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome the presumption that his conduct was reasonable." *Shaw v. State*, 292 Ga. 871, 876 (2013) (quotation marks omitted). And the circumstances of this case reflect that it was objectively reasonable for trial counsel not to seek the juror's removal. Indeed, as recounted in Edwards's co-defendant's appeal in which this same claim was

raised and rejected, Sims's trial counsel testified that

> he did not think the alternate jurors would be favorable to the defense and that he was "more afraid of the alternate" than he was of the juror at issue here. Counsel also noted that, despite her safety concerns, the juror indicated that she could remain impartial and, for that reason, he did not think a motion to excuse her from service would succeed.

321 Ga. at 635–36. Accordingly, Edwards has not met his burden of showing that counsel's failure to seek the juror's removal was so unreasonable that no competent lawyer would have done the same, and this claim fails. See id.

(b) Edwards's next claim of ineffective assistance of counsel likewise fails. Edwards argues that trial counsel should have objected to the trial court's instruction that the jury must assess justification by determining whether the victim, Barlow, used unlawful force. As we explained above in Division 3, there was no plain error because Edwards cannot demonstrate that the use of "victim" rather than "aggressor" in the excessive force instruction likely affected the outcome of his trial. Coextensive with that determination, he cannot demonstrate prejudice in regard to this

16

claim. See *Hampton v. State*, 302 Ga. 166, 168–69 (2017) ("[T]his Court has equated the prejudice step of the plain error standard with the prejudice prong for an ineffective assistance of counsel claim.").

*Judgment affirmed. All the Justices concur.*